# CHARLESTON.

## M. L. CURRY *et al.* v BOONE TIMBER COMPANY

Submitted November 22, 1920.    Decided November 30, 1920.

1. NUISANCE—*Abatable at Suit of Private Individual Specially Damaged.*

   Generally public wrongs are redressed at the suit of appropriate public officials, and before equity will abate a public nuisance at the suit of a private individual it must appear, not only that plaintiff is specially damaged by it in a manner different from the general public, but also that his injury is serious and permanent, and as such tends to depreciate the value of his property. (p. 432.)

2. RAILROADS—*Relief Denied Private Individual Failing to Prove Serious Injury From Obstruction of Street.*

   A case where relief is denied because of failure to prove serious and permanent injury, actual or prospective. (p. 432.)

(WILLIAMS, PRESIDENT, absent).

Appeal from Circuit Court, Boone County.

Suit for injunction by M. L. Curry and others against the Boone Timber Company.   Decree for plaintiffs, and defendant appeals.

*Reversed, injunction dissolved, remanded.*

87 W. Va.

*Leftwich & Shaffer* and *John B. Hager*, for appellant.
*Murphy & Wade,* for appellees.

LYNCH, JUDGE:

The injunction awarded plaintiffs pursuant to the prayer of the bill inhibited the occupation and use of Stollings Street of Laurel City, an unincorporated addition to the town of Clothier, for the purpose of the construction, maintenance and operation thereon by defendant of a standard gauge railroad to haul and transport its timber, severed and to be severed and cut into logs, to defendant's mill at Clothier for manufacture into lumber. Defendant upon notice moved to dissolve, after first filing its answer denying each and every material allegation of the bill as to the anticipated injury or detriment to the persons and property of plaintiffs. The answer the judge treated as an affidavit when hearing the motion for dissolution, which motion he considered in vacation upon affidavits and depositions taken and filed by the parties and refused to grant, but did modify the injunction order so as to permit defendant to haul the timber to its mills in the usual and ordinary modes, except by ralroad. To reverse this order defendant has appealed to this court.

The bases of the relief prayed for, as gathered from the bill, are: (1) Danger to the persons and property of plaintiffs by reason of the anticipated increase of risk of flood caused or aggravated by the presence of the railroad track in the street, if allowed to be built therein, and of injuries due to probable railroad accidents; and (2) interference with convenient access to and from their lots and the buildings thereon, thereby rendering both less valuable because less desirable for themselves and families or tenants. These different grounds include every objection urged in the bill against the occupation of the street for railroad transportation of defendant's logs, and are the only grounds plaintiffs sought to establish by proof, except the apprehension of injury to buildings owned and occupied by them and their families or rented to tenants who occupied them, from fires likely to occur because of the emission of live sparks from locomotives when operated on the track in the street, al-

though there is no allegation in the bill as to such anticipated danger.

Defendant, though a corporation and the owner and operator of a railroad, is not a common carrier of passengers or freight for hire. Its business is the purchase and manufacture of timber into lumber for sale on the market, and it needs a railroad and railroad facilities only to haul and deliver the timber it purchases and owns from the place it is cut to the mills owned by defendant at Clothier on Spruce Fork of Coal River, a short distance from the mouth of Stollings branch, a tributary of the former and from which the street in Laurel City takes its name. The course intended for the railroad proposed for construction begins at the mouth of Stollings branch and extends thence up that stream and Stollings Street an approximate distance of 500 yards, more or less, to defendant's timber land.

The branch is within the boundary designated as the street, that is, it flows in and follows the course of the street, except that for the greater part of the distance traversed by both the bed of the stream is generally several feet lower than the surface of the used road. The width of the street at and near the mouth of the branch is 104½ feet, and thence eastward or up the branch approximately 450 feet to lot No. 7, owned by plaintiff Covert, and beyond that lot, it gradually narrows to a width of about 50 feet, which it retains with slight variations for the remainder of its length. It is the lower level or stream bed and land owned or controlled by defendant or which it has authority to use that defendant proposes to occupy for railroad purposes.

Defendant applied to the county court and from it obtained permission to construct and operate a railroad in the streets of the town, subject to the condition that the performance of the necessary preliminary preparation of the street, location of the track, and operation of the railroad, should, when completed, cause the least possible obstruction to and interference with ordinary and usual travel along, over and across the streets, and that, wherever reasonably necessary, the company should construct and maintain suit-

87 W. Va.

able grade crossings, the space between and outside of the rails to be covered by boards, not less than two inches thick and of sufficient length, adequately secured by spikes or nails, and when so constructed, to be on the same elevation as the rails, and on each side of the track convenient approaches thereto; and as a further limitation upon the exercise of the privilege granted, the county court restricted the use of the streets, where practicable, to the part thereof not devoted to public travel, the entire work of preparation, construction and operation to be subject to the direction and approval of the county road engineer, and to the court's revocation of the grant for failure to comply with the prescribed conditions; the right so to use the streets "in no case to continue longer than is reasonably necessary to manufacture into lumber the timber now owned" by defendant "between the mouth of Laurel Creek, at Clothier, and the mouth of Bias branch, below Jeffrey," within which boundary there is timber already cut aggregating 1,000,000 feet and about the same quantity of standing timber which defendant proposes to cut and transport by the railroad, the construction of which is enjoined.

As the privilege so granted doubtless conforms with the application therefor, the duration of its enjoyment is limited in time and therefore is temporary only and not permanent, and according to the clear, indeed uncontroverted, proof, will continue not to exceed three months, and but for the injunction the right to exercise it would have terminated pending this appeal. For defendant's officers and agents testify that a period of three months is amply sufficient to accomplish the intended transportation.

The theory of plaintiffs is, that as the appropriation of the street, though temporary, in which they in common with other lot owners have an easement, creates and constitutes a public nuisance, they may cause its abatement upon the ground that it indirectly affects their property rights and renders the use and enjoyment thereof less valuable. As a matter of fact the damage likely to ensue, if any, is general and will not affect the right or interest of one lot owner

more than it will owners of other lots fronting on the street, who are not parties to the suit. The general rule laid down in many decisions beginning with *Keystone Bridge Co.* v. *Summers,* 13 W. Va. 476, and including *Davis* v. *Spragg,* 72 W. Va. 672, is that equity will not abate such a nuisance upon the application of one or more plaintiffs who sue in a private capacity, unless they show by their pleading and proof that the nuisance causes them an injury different in kind from that suffered by others similarly situated, that such injury is serious and permanent, and affects the substance and value of their property.

The doctrine is established in this state beyond question. It has a direct relevancy to the facts alleged and proved beyond doubt in this case. No evidence shows, not a witness, whether a plaintiff or not, says, that damage or injury can or likely will occur, or has occurred, to any one or more of the several complainants peculiarly affecting them that will not equally affect every other owner of property along Stollings Street, from the building or operation of the railroad. Moreover, it is gravely doubtful, when constructed and operated to accomplish the temporary transportation of the logs, whether plaintiffs will suffer or are likely to suffer any ill effects from such use of the street. If the case alleged and proved discloses any injury to plaintiffs or to the public, it is only a temporary obstruction to public travel over the highway, and as far as concerns plaintiffs alone it renders ingress and egress to and from their properties only slightly, if at all, more inconvenient, and that too only for three months or less. 'As proposed and as already intimated, the railroad will, for the greater part of the distance up Stollings branch, occupy the bed of the stream, and thence only for a much less distance the surface of the street, and but little if any of the traveled portion thereof, except where it is necessary to cross from one side to the other. Apparently at no point is the street less than 40 feet wide, when measured according to the scale of the plat contained in the record, and the railroad occupies no more than eight or ten feet of that width, leaving three-fourths or more of the street unincumbered.

Moreover, the order of the county court authorizing and sanctioning the construction and operation of the proposed railroad and prescribing the care and diligence to be observed therein, impliedly is based upon a finding that public rights will not seriously be affected thereby, a precaution entitled to weight and influence upon the proper determination of the controversy. Besides, it has taken no action looking to a revocation of the grant and expressive of dissatisfaction with the purpose thereof.

These reasons given require the reversal of the decree, dissolution of the injunction, remand of the cause, and direction to the circuit court to dismiss the bill and award costs to defendant.

*Reversed, injunction dissolved, remanded.*