INTERNATIONAL SHOE CO. *v.* KIRK. HEATWOLE, *etc., et al.*

(No. 9601)

Submitted April 18, 1944. Decided June 13, 1944.

*Robert S. Spilman* and *Summers H. Sharp,* for petitioner.

Rose, President:

Upon the relation of International Shoe Company, a foreign corporation, authorized to hold property and do business in the State of West Virginia, this Court issued a rule requiring Kirk Heatwole and John W. Cook, justices of the peace of Summers County, and C. A. Byus, to show cause, if any they could, why a peremptory writ of prohibition should not be awarded prohibiting them from proceeding further in, or enforcing, a judgment rendered in favor of Byus and against the relator for $98.00 and costs in an action instituted before Heatwole but tried and determined by Cook upon the disqualification of Heatwole.

The relator operates a tannery at Marlinton, in Pocahontas County, where it has its only place of business in this state, and has never done business, or had any property, officer or agent in Summers County.

The writ is sought on the grounds: (1) That, as a matter of law, no cause of action existed in favor of said Byus against the relator; (2) that if, in fact, any such cause of action did exist, the same arose in Pocahontas County; and (3) that no jurisdiction of the person of the relator has ever been obtained, the only service of summons having been by the acceptance thereof in Kanawha County by the Auditor of the State of West Virginia, as statutory attorney in fact of the relator.

Neither of the two justices made return, answer or other appearance to the rule. Byus answered, purporting to state the actual cause of action and insisting that the acceptance of service of the summons by the Auditor constituted legal process against the relator.

The summons in the case in no way defines the cause of action. It is simply "for the recovery of money due damages for a wrong". This would cover actionable tort within the jurisdiction of the justice, or even money due on a contract. *Taylor* v. *Stevenson,* 82 W. Va. 677, 97 S. E. 136; *O'Connor* v. *Dils,* 43 W. Va. 54, 26 S. E. 354.

No pleading or statement of claim was filed before the justice. Such statement of the claim might have been "oral or in writing; if oral, the substance of them" should have been "entered by the justice in his docket". Code 50-4-3. No such entry was made by the justice. The only statement appearing on the docket which in any way alludes to the cause of action is the following recital as ground for overruling the motion of the relator, on special appearance, to quash the summons and return: "* * * and it appearing to the Court that the subject matter of said action, to-wit; damage for pollution of Greenbrier River in Summers County, West Virginia, was within the jurisdiction of said Justice * * *". This language expresses no cause of action. The simple pollution of a river would be an offense against the public, and not a wrong for which an individual could have private damages. But the court of a justice of the peace is not a court of record, and the docket of such justice is not a verity. It may be explained or supplemented by evidence extrinsic thereto. And in a

prohibition proceeding we must begin with a presumption that the inferior court did not unlawfully assume or attempt to exercise jurisdiction. *Conservative Life Insurance Co. v. Alexander,* 114 W. Va. 451; 172 S. E. 520; *State v. O'Brien,* 96 W. Va. 353, 122 S. E. 919.

The relator alleges in its petition that it "is informed, believes and avers that said civil action * * * against petitioner for the recovery of 'damage for pollution of Greenbrier River in Summers County, West Virginia' was and is based and predicated wholly and solely upon the discharge into said stream by petitioner at Marlinton, in Pocahontas County, of certain waste products from its said tannery there located, and that the gravamen of plaintiff's claim for damages was that such discharge of said waste products into said river at times discolored its water below said tannery and interfered with the fishing in said stream from Marlinton to the mouth of said river at Hinton, a distance of over a hundred miles".

The answer of Byus controverts this allegation of the petitioner and says that he is the owner of a tract of land fronting on Greenbrier River, in Summers County, and that "tannic acid, sludge, sediment, and the draining from the tanning vats" of the relator were "discharged into the Greenbrier River at Marlinton, causing said Greenbrier River to become polluted, discolored and unfit for human consumption, * * * that through the natural flowage of said stream passed * * * into the County of Summers, West Virginia, near the place where your respondent's property is located on the Greenbrier River * * *." This answer further states that: "your respondent alleged and proved at the said trial * * * that the resale value of the real estate owned by the respondent (summer home and camp) had been diminished by reason of said pollution, that his right as a riparian owner had been injured and damaged in that at the time of said pollution his family and himself could not bathe in said stream and neither could he fish and enjoy said stream, in its original beauty and pureness, at said time of pollution"; and that said cause of action arose in Summers County, "notwithstand-

ing the source of said pollution originated in Pocahontas County", since "it would be physically impossible to damage the said respondent until said pollution, discoloration and filth passed on and across and deposited upon the land and premises in Summers County, West Virginia".

The relator demurred to this answer, but filed no replication and took no evidence. Therefore, the answer, insofar as it conflicts with the petition in its statement of fact, must be accepted as true.

The respondent very clearly states that he "alleged" certain facts relating to his purported injury. This we understand to mean that he pleaded orally this cause of action. The facts so alleged or pleaded are clearly based upon a claimed violation of his riparian rights. He was the owner of a parcel of land abutting on Greenbrier River and as such was entitled to have the said river flow to and past his land in its normal degree of purity, uncontaminated by more than ordinary use by the upper owners. *II Farnham, Waters and Water Rights,* Sec. 515. He states that the water has been periodically polluted by the relator; that this pollution interfered with the normal use of the water for domestic purposes, bathing and fishing, and that the aggregate of these several wrongs reduced the value of his land.

The unlawful pollution of a stream is a public nuisance. A private individual can maintain an action for relief against a public nuisance only when he has suffered therefrom an injury different from that inflicted upon the public in general, not only in degree, but in character. *Curry* v. *Boone Timber Co.,* 87 W. Va. 429, 105 S. E. 263; *Davis* v. *Spragg,* 72 W. Va. 672, 79 S. E. 652; *Talbott* v. *King,* 32 W. Va. 6, 9 S. E. 48; *Keystone Bridge Co.* v. *Summers,* 13 W. Va. 476.

What special right possessed by the respondent, and not by the public, has been violated? Was it the right to enjoy the river in its original beauty? A riparian owner has no proprietary right in a beautiful scene presented by a river any more than any other owner of land could

claim to a beautiful landscape. Had he a special and peculiar right to fish in the river, differing from that possessed by all others? He had, of course, an exclusive means of approach to the river across his own land, but this was a right to the use of the land, not of the river. He can sit on his land and fish therefrom, and could prevent others from doing so, but anyone whomsoever could fish in the same waters to the very edge of the river and to the same extent as the respondent, if such others could reach these waters from a boat, a bridge, or by any other means. "An exclusive right of fishery in the water adjacent to property is not one of the rights of the riparian owner". *II Farnham, Waters and Water Rights*, Sec. 375. Is the right to bathe in the river, on which his land fronts, any greater in a riparian owner than in the general public? All may use the waters of a river for this purpose equally with the owner of the abutting land, so long as they do not trespass on the land.

Moreover, the only instance of actual pollution of the river alleged to have occurred was "for a period of two weeks" after February 10, 1944. How the bathing and fishing rights connected with a "summer home and camp" could have been interfered with in February is not shown. It is alleged that such pollution occurred at "regular intervals", but how frequent these intervals were, or whether any other instance of pollution took place during the respondent's ownership of the land, is not stated. Therefore, the record in this proceeding shows that the respondent had no private cause of action based on the alleged fact that the pollution or the discoloration of the river interfered with his fishing or bathing rights therein or with his pretended right to continue to enjoy the beauty of the river.

If, however, sediment, sludge, or any other refuse matter placed in the river by the relator was, in fact, carried to and cast upon the respondent's land, to its injury, a right of action would accrue to him. *Day* v. *Louisville Coal & Coke Co.*, 60 W. Va. 27, 53 S. E. 776; *Farley* v. *Crystal Coal & Coke Co.*, 85 W. Va. 595, 102 S. E. 265. And

pollution of a stream by sewage, chemicals or other deleterious matter, which impairs the use of the water by lower riparian owners for domestic purposes, may create a private right of action in such owners. *McKinney* v. *Trustees of Emory and Henry College,* 117 Va. 763, 86 S. E. 115; *Arminius Chemical Co.* v. *Landrum,* 113 Va. 7, 73 S. E. 459. But no such charge is here made. It is not alleged that the use of the land was interfered with by the pollution of the river. The stream was discolored but was not poisoned nor made odoriferous. True, it is said it was rendered unfit for human consumption, but it is nowhere charged that such use ever had been, or ever would be, made of the water, and such use would have been extraordinary.

Therefore, on the showing of the respondent, himself it clearly appears that he had no cause of action against the relator. We are, therefore, relieved of the necessity of determining whether the alleged wrong is to be considered as having taken place in Summers or Pocahontas County, or whether the Auditor could accept service in Kanawha County of the summons in this case issued in Summers County.

The writ will be awarded as prayed for.

*Writ awarded.*

Fox, Judge, concurring:

I concur in the result, and find no fault with the reasoning in the opinion prepared by Judge Rose. I would prefer, however, to rest the decision on my belief that plaintiff's cause of action, if any, arose in Pocahontas County. Treating the cause of action as arising in Pocahontas County, a justice of the peace in Summers County could not acquire jurisdiction thereof by a summons directed to a constable of that county, which was served on the state auditor, or service thereof accepted by that official. *Roberts* v. *Hickory Camp Coal & Coke Co.,* 58 W. Va. 276, 52 S. E. 182; *Bank of Gassaway* v. *Stalnaker,* 69 W. Va. 85, 71 S. E. 183; *Sovereign Coal Co.* v. *Britton,* 77 W. Va.

566, 87 S. E. 925; *United States Coal & Coke Co.* v. *Kitts,* 126 W. Va. 13, 27 S. E. (2d) 65. These cases are based on constitutional and statutory provisions, defining and limiting the powers and jurisdiction of justices of the peace. Constitution, Sec. 28, Art. VIII, Code 50-2-1.

Judge Lovins concurs in this note.