380 S.E.2d 198

**Harry L. HENDRICKS and Mary Hendricks, His Wife**

v.

**Walter S. STALNAKER.**

**No. 18489.**

Supreme Court of Appeals of West Virginia.

April 6, 1989.

James C. West, Jr., Kathryn A. Kersting, and Jones, Williams, West & Jones, Clarksburg, for Walter S. Stalnaker.

Robert M. Morris, Weston, for Harry L. Hendricks and Mary Hendricks, his wife.

NEELY, Justice:

Walter S. Stalnaker, defendant below, appeals from a decision by the Circuit Court of Lewis County declaring a water well drilled on his property to be a private nuisance to Henry L. Hendricks and Mary Hendricks, plaintiffs below. The Hendrickses, owners of the property adjacent to that of Mr. Stalnaker, were refused a Health Department permit for a septic system located within 100 feet of Mr. Stalnaker's water well. The Circuit Court of Lewis County, based on a jury verdict, found the water well to be a private nuisance and ordered its abatement. On appeal, Mr. Stalnaker argues that because his water well was not an unreasonable use of his land, he is not liable for the effects on the Hendrickses' property. We agree and, therefore, reverse the decision of the circuit court.

Mr. Stalnaker owns approximately 10 acres of land situated on Glady Fork Road, Lewis County. In 1985, Mr. Stalnaker constructed his home on a 2.493 acre portion of the tract, and had two water wells dowsed. One well was located behind his house and the other, near the Hendrickses' property. The rear well was near land disturbed by a former strip mine and, therefore, the well produced poor quality water. Except for a small section of land near the Hendrickses' property—the location of the second "dowsed" well—most of Mr. Stalnaker's home tract had been disturbed·by a strip mine. In August 1985, Mr. Stalnaker spent approximately $3,000 in an unsuccessful attempt to treat the water from the rear well.

In 1984, the Hendrickses purchased approximately 2.95 acres adjacent to Mr. Stalnaker's property for a home site or a trailer development.[1] On 31 December 1985, Mr. Hendricks met with the Lewis County sanitarian to determine locations for a water well and a septic system. The Health Department requires a distance of 100 feet between water wells and septic systems

---

1. Both Mr. Stalnaker and the Hendrickses own additional land in the area. Mr. Stalnaker owns 40 acres, in addition to the 10 acre tract previously discussed. This additional land is heavily wooded hillside located across the road from his home tract. The Hendrickses, in addition to the 2.95 acre tract, own 21 acres in the immedi- ate vicinity. Most of the Hendrickses' additional land is located across the road from the 2.95 acre tract, but some is directly south of the 2.95 acres. The Hendrickses' land across the road had a septic system installed in May or June of 1987.

before it will issue permits.[2] Because the Hendrickses' land was too hilly or had been disturbed in order to build a pond, the only location for a septic system on the tract was near Mr. Stalnaker's property.[3] On 13 January 1986, the Hendrickses contacted the county sanitarian to visit their property to complete the septic system permit application. The county sanitarian said because of snowy weather he would come out later in the week.

On 13 January 1986, Mr. Stalnaker called the sanitarian and was told about the Hendrickses' proposed septic system. Mr. Stalnaker was also told that the county sanitarian would be unavailable on 14 January 1986 but could meet with him on 15 January 1986. On 14 January 1986, Mr. Stalnaker contacted a well driller, who applied for and received a well drilling permit for the second well from the assistant sanitarian. The well was completed on 25 January 1986 but was not connected to Mr. Stalnaker's home until January 1987.

On 15 January 1986, the county sanitarian informed Mr. Hendricks that no permit for his proposed septic system could be issued because the absorption field for his septic system was within one hundred feet of Mr. Stalnaker's water well. Mr. Hendricks did install a septic system without a permit in January 1987; however, the system was left inoperative pending the outcome of this suit.

The Hendrickses filed suit in the Circuit Court of Lewis County on 29 January 1987 requesting (1) the water well be declared a private nuisance, (2) the nuisance be abated, and (3) damages. In a bifurcated trial, the jury found that the water well was a private nuisance and the trial judge ordered it to be abated. On the issue of damages the jury found for the defendant and awarded no damages.

I

In the past we have broadly described what constitutes a nuisance:

> A nuisance is anything which annoys or disturbs the free use of one's property, or which renders its ordinary use or physical occupation uncomfortable.... A nuisance is anything which interferes with the rights of a citizen, either in person, property, the enjoyment of his property, or his comfort.... A condition is a nuisance when it clearly appears that enjoyment of property is materially lessened, and physical comfort of persons in their homes is materially interfered with thereby. (Citations omitted).

*Martin v. Williams,* 141 W.Va. 595, 610–611, 93 S.E.2d 835, 844 (1956). Also cited in *Mahoney v. Walter,* 157 W.Va. 882, 205 S.E.2d 692 (1974) (automobile salvage yard); *Sharon Steel Corp. v. City of Fairmont,* 175 W.Va. 479, 334 S.E.2d 616 (1985) (regulation of hazardous waste); *Sticklen v. Kittle,* 168 W.Va. 147, 287 S.E.2d 148 (1981) (construction of a high school near an airport). This definition of nuisance includes acts or conditions that affect either the general public or a limited number of persons. In *Hark v. Mountain Fork Lumber Co.,* 127 W.Va. 586, 595–96, 34 S.E.2d 348, 354 (1945) we defined a public nuisance as that which "affects the general public as public, and [a private nuisance as that which] injures one person or a limited number of persons only."

In order clearly to delineate between a public nuisance and a private nuisance, we define a private nuisance as a substantial and unreasonable interference with the private use and enjoyment of another's land. The definition of private nuisance includes conduct that is intentional

---

**2.** The county sanitarian testified that the purpose of the distance requirement was to protect not just an individual well but to prevent contamination of the ground streams of the aquifer.

**3.** A septic system with pump(s) using the other land owned by the Hendrickses was considered by the county sanitarian who testified:

> I have had to work several septic systems over the years where you have to pump sew-

age a long distance. The more mechanical devices you get into a septic system, the greater the expense, the greater the maintenance, and the greater the possibility of problems.

I personally don't like them. I've had some success, and I've had some major problems with these pump-type systems. But, like I said, they are an alternative.

and unreasonable, negligent or reckless, or that results in an abnormally dangerous conditions or activities in an inappropriate place. *See* W. Prosser, *Handbook of the Law of Torts* § 87 at 580, § 89 at 593 (4th ed. 1971); *Restatement (Second) of Torts* §§ 821D, 821F, 822 (1979); W. Keeton, *Prosser and Keeton on the Law of Torts* § 87 (5th ed. 1984); *Frank v. Environmental Sanitation Management, Inc.*, 687 S.W.2d 876 (Mo.1985); *O'Brien v. City of O'Fallon*, 80 Ill.App.3d 841, 36 Ill.Dec. 36, 400 N.E.2d 456 (1980); *Birchwood Lakes Colony Club, Inc. v. Borough of Medford Lakes*, 90 N.J. 582, 449 A.2d 472 (1982). Recovery for a private nuisance is limited to plaintiffs who have suffered a significant harm to their property rights or privileges caused by the interference. *Restatement (Second) of Torts* §§ 821E, 821F (1979).

■ Early West Virginia cases indicate that the existence of a private nuisance was determined primarily by the harm caused. *Medford v. Levy*, 31 W.Va. 649, 8 S.E. 302 (1888) (cooking odors); *Flanagan v. Gregory and Poole, Inc.*, 136 W.Va. 554, 67 S.E.2d 865 (1951) (inadequate culvert). Gradually the focus included an examination of the reasonableness of the property's use.[4] *See McGregor v. Camden*, 47 W.Va. 193, 34 S.E. 936 (1899) (required an examination of the location, capacity and management of oil and gas well); *Pope v. Edward M. Rude Carrier Corp.*, 138 W.Va. 218, 75 S.E.2d 584 (1953) (transportation of explosives); *Martin, supra* (used automobile lot); *State ex rel. Ammerman v. City of Philippi*, 136 W.Va. 120, 65 S.E.2d 713 (1951) (tire recapping business); *Ritz v. Woman's Club of Charleston*, 114 W.Va. 675, 173 S.E. 564 (1934) (noise); *Harless v. Workman*, 145 W.Va. 266, 114 S.E.2d 548 (1960) (coal dust).

■ In the area of public nuisance, we have made explicit that an examination of the "reasonableness or unreasonableness of the use of property in relation to the particular locality" is a fair test to determine the existence of a public nuisance. Syllabus Point 5, *Sharon Steel Corp., supra;* Syllabus Point 3, *Sticklen, supra.* Similarly, any determination of liability for a private nuisance must include an examination of the private use and enjoyment of the land seeking protection and the nature of the interference.[5]

4. Contrary to the generally received wisdom, e.g., W. Keeton, *supra* in text, § 86 at 617; *Restatement (Second) of Torts* § 821 comment a (1979), there probably never was an "assize of nuisance" in the twelfth century from which the doctrine of nuisance springs. Indeed, nuisance law begins in the twelfth century, but the pipe rolls do not, until later centuries, include the word *"nocumentum."* Probably, therefore, early actions for nuisance were brought under the writ of novel disseisin on the theory that one landowner could disturb the quiet possession and enjoyment of another landowner through activities lawful in themselves. Even in the twelfth century the neatest householder, the most peaceable citizen, could be a bad neighbor. He might choose to fiddle when his neighbor chose to nap; he might permit his dog to howl at midnight; he might kindle his backyard fire where its smoke would choke his neighbor's backyard guests; he might manufacture strange and noxious odours that he allowed to escape from his premises; or, he might throw waste material into the stream to wander to his neighbor's property. *See* J. Loengard, "The Assize of Nuisance: Origins of an Action at Common Law," 37 *Cambridge L.J.* 144 (1978).

Although balancing tests are always unsatisfactory because they are unpredictable, it nonetheless appears that balancing was at the heart of actions for nuisance from its inception. Early on the law was asked to decide whether activities lawful in themselves, such as putting up a mill, fencing a pasture, or digging a ditch, were so unreasonable that they essentially diminished the estate of a neighbor. It is in this regard that the scholarship concerning the evolution of the doctrine of nuisance from the Assize of Novel Desseisin is relevant: at the heart of nuisance is the notion that the lawful use of one estate has the effect of "ousting" an adjacent landowner from his estate. And, then, inevitably courts need look at the reasonableness of conduct under all of the circumstances.

5. The *Restatement (Second) of Torts* § 822 (1979) requires a consideration of unreasonableness as part of the determination of liability.

One is subject to liability for a private nuisance if, but only if, his conduct is a legal cause of an invasion of another's interest in the private use and enjoyment of land, and the invasion is either

(a) intentional and unreasonable, or

(b) unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities.

Because the present case concerns conduct that is not a negligent, reckless, or abnormally dangerous activity, our discussion of private nuisance is limited to conduct that is intentional and unreasonable. An interference is intentional when the actor knows or should know that the conduct is causing a substantial and unreasonable interference. *Restatement (Second) of Torts* § 825 (1979). The unreasonableness of an intentional interference must be determined by a balancing of the landowners' interests. An interference is unreasonable when the gravity of the harm outweighs the social value of the activity alleged to cause the harm. *See* W. Prosser, *supra* § 87, at 581, § 89 at 596; *Restatement (Second) of Torts* § 826 (1979); W. Keeton, *supra* § 88, at 629. *Restatement (Second) of Torts* §§ 827 and 828 (1979) list some of the factors to be considered in determining the gravity of the harm and the social value of the activity alleged to cause the harm.[6] However, this balancing to determine unreasonableness is not absolute. Additional consideration might include the malicious or indecent conduct of the actor. *Restatement (Second) of Torts* § 829.

Other jurisdictions applying the balancing test to determine the unreasonableness of the interference include: *Waschak v. Moffat*, 379 Pa. 441, 109 A.2d 310 (1954); *Crest Chevrolet–Oldsmobile–Cadillac, Inc. v. Willemsen*, 129 Wis.2d 129, 384 N.W.2d 692 (1986); *Robie v. Lillis*, 112 N.H. 492, 299 A.2d 155 (1972); *Sans v. Ramsey Golf & Country Club, Inc.*, 29 N.J. 438, 149 A.2d 599 (1959); *Looney v. Hindman*, 649 S.W.2d 207 (Mo. banc 1983).

In the case before us, the Hendrickses' inability to operate a septic system on their property is clearly a substantial interference with the use and enjoyment of their land. The record indicates that the installation of the water well was intentional, but there was no evidence that the installation was done so as maliciously to deprive the Hendrickses of a septic system. Mr. Stalnaker wanted to insure himself of an adequate water supply and found no alternative to the well he dug.

The critical question is whether the interference, the installation of a water well, was unreasonable. Unreasonableness is determined by balancing the competing landholders' interests. We note that either use, well or septic system, burdens the adjacent property. Under Health Department regulations, a water well merely requires non-interference within 100 feet of its location. In the case of a septic system, however, the 100 foot safety zone, extending from the edge of the absorption field, may intrude on adjacent property. Thus, the septic system, with its potential for drainage, places a more invasive burden on adjacent property.[7] Clearly both uses present similar considerations of gravity of harm and social value of the activity alleged to cause the harm. Both a water well and a septic system are necessary to use this land for housing; together they constitute the in and out of many water systems. Neither party has an inexpensive and practical alternative. The site of the water well means quality water for Mr. Stalnaker and the Hendrickses have only one location available for their septic system.

6. The *Restatement (Second) of Torts* § 827 (1979) lists the following "gravity of harm" factors:
  (a) The extent of the harm involved;
  (b) the character of the harm involved;
  (c) the social value that the law attaches to the type of use or enjoyment invaded;
  (d) the suitability of the particular use or enjoyment invaded to the character of the locality; and
  (e) the burden on the person harmed of avoiding the harm.
  The *Restatement (Second) of Torts* § 828 lists the following "utility of conduct" factors:

  (a) the social value that the law attaches to the primary purpose of the conduct;
  (b) the suitability of the conduct to the character of the locality; and
  (c) the impracticability of preventing or avoiding the invasion.

7. Rules and Regulations of the Health Department § 64–9–5.7 [1983] require a recorded easement or authorization for use of or crossing of adjacent property for off lot disposal of sewage or effluent.

■ In the case before us, we are asked to determine if the water well is a private nuisance. But if the septic system were operational, the same question could be asked about the septic system.[8] Because of the similar competing interests, the balancing of these landowners' interests is at least equal or, perhaps, slightly in favor of the water well. Thus, the Hendrickses have not shown that the balancing of interests favors their septic system. We find that the evidence presented clearly does not demonstrate that the water well is an unreasonable use of land and, therefore, does not constitute a private nuisance.

Although questions of fact are normally for the jury, when the material facts are not disputed and only one inference may be drawn from them by reasonable minds, the factual questions at issue become questions of law for the court. *See* Syllabus Point 2, *Brake v. Cerra,* 145 W.Va. 76, 112 S.E.2d 466 (1960); Syllabus Point 4, *Walton v. Given,* 158 W.Va. 897, 215 S.E.2d 647 (1975).

We find that because the evidence is not disputed and only one interference is reasonable, the trial court should have held as a matter of law that the water well was not a private nuisance.[9]

Accordingly, for the reasons stated above, the judgment of the Circuit Court of Lewis County is reversed and the case is remanded for entry of an order consistent with this opinion.

Reversed.

---

**8.** In a factually similar case, the Supreme Court of Oklahoma held that a sewage lagoon created within 100 feet of a neighbor's water well was a "willful" injury to the adjacent property and awarded attorneys' fees. The court reasoned that under an Oklahoma statute the sewage lagoon actively burdened adjacent property whereas the water well was a non-invasive burden. *Schaeffer v. Shaeffer,* 743 P.2d 1038 (Okla. 1987).

**9.** We note the present case is relatively simple and does not require a legal or equitable remedy. For an enlightening discussion of potential legal or equitable remedies and the factors to be considered, including priority of use, *see* E. Rabin, "Nuisance Law: Rethinking Fundamental Assumptions," 63 *Va.L.Rev.* 1299 (1977).