PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

WILLIAM R. RHODES; RUSSELL H.
MILLER; VALORI A. MACE,

       *Plaintiffs-Appellants,*

v.

E.I. DU PONT DE NEMOURS AND
COMPANY,

       *Defendant-Appellee.*

No. 10-1166

Appeal from the United States District Court
for the Southern District of West Virginia, at Parkersburg.
Joseph R. Goodwin, Chief District Judge.
(6:06-cv-00530)

Argued: January 25, 2011

Decided: April 8, 2011

Before NIEMEYER, DUNCAN, and KEENAN,
Circuit Judges.

Affirmed in part; dismissed in part by published opinion.
Judge Keenan wrote the opinion, in which Judge Niemeyer
and Judge Duncan joined.

## COUNSEL

**ARGUED:** Robert A. Bilott, TAFT, STETTINIUS & HOL-
LISTER, LLP, Cincinnati, Ohio, for Appellants. Charles

Glaston Cole, STEPTOE & JOHNSON, LLP, Washington, D.C., for Appellee. **ON BRIEF:** John B. Nalbandian, Aaron M. Herzig, Heidi H. Trimarco, TAFT, STETTINIUS & HOLLISTER, LLP, Cincinnati, Ohio; J. Steven Justice, TAFT, STETTINIUS & HOLLISTER, LLP, Dayton, Ohio; R. Edison Hill, Harry G. Deitzler, HILL, PETERSON, CARPER, BEE & DEITZLER, PLLC, Charleston, West Virginia; Larry A. Winter, WINTER, JOHNSON & HILL, PLLC, Charleston, West Virginia, for Appellants. Jennifer Quinn-Barabanov, Patricia B. Paredes, STEPTOE & JOHNSON, LLP, Washington, D.C., for Appellee.

---

## OPINION

KEENAN, Circuit Judge:

This case arose under the district court's diversity jurisdiction and involves the contamination of a public water supply in Parkersburg, West Virginia. We consider whether the plaintiffs, individuals who consumed the water but have not become ill as a result, demonstrated an injury sufficient to survive summary judgment on certain West Virginia common law tort claims. We also review the district court's rulings denying class certification of those claims under Federal Rule of Civil Procedure 23(b). Finally, we decide whether the plaintiffs, who obtained voluntary dismissals in the district court of their individual claims for medical monitoring, have standing to pursue an appeal of the district court's denial of class certification of those claims. For the reasons that follow, we dismiss the plaintiffs' claim challenging the district court's denial of their class certification request for the medical monitoring claims, and we affirm the balance of the district court's judgment.

I.

We begin by stating the facts and procedural history relevant to our review of the district court's summary judgment

and class certification holdings. The plaintiffs, William R. Rhodes, Russell H. Miller, and Valori A. Mace, are residents of the City of Parkersburg in Wood County, West Virginia, and are customers of the Parkersburg City Water Department (the Water Department), which supplies water to homes located in Wood County. E.I. du Pont de Nemours and Company (DuPont) operates a manufacturing facility in Wood County. For an extended period of time, DuPont's plant has discharged perfluorooctanoic acid (PFOA) into the environment surrounding the plant. Measurable quantities of PFOA have been detected in the water that is pumped by the Water Department into the plaintiffs' residences. PFOA also has accumulated in the plaintiffs' blood and has been detected in the homes of other customers of the Water Department.

In 2006, the plaintiffs filed a complaint against DuPont in the Circuit Court of Wood County, West Virginia. The plaintiffs asserted six common law claims, individually and on behalf of a class of customers of the Water Department, addressing the contamination of their municipal water supply and the resulting presence of PFOA in their blood. The plaintiffs sought damages with respect to claims of negligence, gross negligence, battery, trespass, and private nuisance. The plaintiffs also sought injunctive relief to obtain long-term diagnostic testing (medical monitoring) for latent diseases on behalf of a class of Water Department customers exposed to PFOA beginning in 2005. Additionally, the plaintiffs asserted individual and class claims for medical monitoring, a common law tort first recognized by the West Virginia Supreme Court of Appeals in 1991.[1]

---

[1]To sustain a claim for the tort of medical monitoring, a plaintiff must prove that he or she has been significantly exposed to a proven hazardous substance through the tortious conduct of the defendant and that, as a result, the plaintiff has suffered a substantially increased risk of contracting a serious latent disease, which makes it reasonably necessary for the plaintiff to undergo periodic diagnostic medical examinations different from what would be prescribed in the absence of the exposure. *Bower v. Westinghouse Elec. Corp.*, 522 S.E.2d 424, 432-33 (W. Va. 1999). Further, medical monitoring procedures must exist that make early detection of a disease possible. *Id.* at 433.

DuPont removed the case to the federal district court, invoking the court's diversity jurisdiction. *See* 28 U.S.C. § 1332(a)(1). After conducting a hearing on the plaintiffs' motion for class certification under Federal Rule of Civil Procedure 23(b), the district court concluded that the elements of a medical monitoring tort could not be proved on a class-wide basis using the type of evidence presented by the plaintiffs. The district court therefore denied the plaintiffs' motion for class certification of their medical monitoring claims. The district court further held that the plaintiffs had not met their burden under Rule 23 for certification of a class to pursue medical monitoring relief based on the plaintiffs' claims of negligence, gross negligence, battery, trespass, and private nuisance (collectively, the traditional common law torts or tort claims). The district court thus denied the plaintiffs' motion for class certification of the traditional common law tort claims.

The plaintiffs later amended their complaint to add individual and class claims asserting a cause of action for public nuisance. The plaintiffs also sought leave to file a second motion for certification of a class to seek medical monitoring relief incident to the traditional common law tort claims, except battery, which they had asserted in their earlier complaint. The district court denied this request.

DuPont filed motions seeking summary judgment on all the plaintiffs' claims. The district court granted in part and denied in part DuPont's motions. The district court granted DuPont's motions with respect to all the plaintiffs' traditional common law tort claims, and the additional claim of public nuisance (hereafter collectively, the traditional common law tort claims). *Rhodes v. E.I. Du Pont De Nemours and Co.*, 657 F. Supp. 2d 751, 762-73 (S.D.W. Va. 2009). Based on that ruling, the district court also denied as moot the plaintiffs' motion for class certification of the public nuisance claim. *Id.* at 778. However, the district court denied summary judgment

with respect to the plaintiffs' individual claims of medical monitoring.[2] *Id.* at 774-777.

In order to appeal immediately the adverse summary judgment and certification rulings, the plaintiffs filed a stipulation of voluntary dismissal under Federal Rule of Civil Procedure 41(a)(1) of their individual claims for medical monitoring. The district court entered final judgment for DuPont, from which the plaintiffs filed this appeal.

## II.

We review the district court's award of summary judgment de novo. *PCS Phosphate Co. v. Norfolk S. Corp.*, 559 F.3d 212, 217 (4th Cir. 2009). We apply the same standard as the district court, under which summary judgment is proper if the nonmoving party fails to make a sufficient showing of an essential element of that party's case. *Cray Commc'ns, Inc. v. Novatel Computer Sys., Inc.*, 33 F.3d 390, 393 (4th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). Such a failure of proof renders all other facts immaterial. *Id.* Under that circumstance, the moving party is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56.

We begin our review of the district court's summary judgment holdings by considering the plaintiffs' traditional common law tort claims. Although these various tort claims involve distinct elements of proof, the claims all require that a plaintiff establish that the defendant's conduct produced some "injury" to the plaintiff or to the plaintiff's property. *See Atkinson v. Harman*, 158 S.E.2d 169, 173 (W. Va. 1967) (duty, breach, and injury are essential elements of negli-

---

[2]The district court also rejected DuPont's argument that the plaintiffs' claims were barred by the statute of limitations. *Rhodes*, 657 F. Supp. 2d at 762. The district court ruled that the statute of limitations had not run because the plaintiffs alleged "continuing" torts. *Id.* at 760.

gence); *W. Va. Fire & Cas. Co. v. Stanley*, 602 S.E.2d 483, 494 (W. Va. 2004) (person liable for battery if he or she acts intending to cause harmful or offensive contact with person of another and a harmful bodily contact directly or indirectly results); *Hark v. Mountain Fork Lumber Co.*, 34 S.E.2d 348, 352 (W. Va. 1945) (trespass is unauthorized entry onto the land of another and doing damage to or interfering with his use of his real property); *Hendricks v. Stalnaker*, 380 S.E.2d 198, 200 (W. Va. 1989) (private nuisance is "substantial and unreasonable interference with the private use and enjoyment of another's land"); *Hark*, 34 S.E.2d at 354 (individual asserting public nuisance claim in private capacity must assert "special injury"). With respect to each of the plaintiffs' traditional common law tort claims, the district court concluded that the accumulation of PFOA in the plaintiffs' blood, and the alleged risk of developing certain diseases in the future, did not constitute an "injury" for purposes of proving each of these common law claims. In reviewing this holding, we consider the required element of "injury" in the context of each of these traditional common law torts.

A.

Under West Virginia law, a plaintiff alleging negligence or gross negligence is required to prove that he or she sustained an injury caused by the defendant's allegedly negligent conduct. *See Atkinson*, 158 S.E.2d at 173. Generally, such injury must already have occurred, although a plaintiff sometimes may recover for future effects of a present injury that are reasonably certain to occur. *See Cook v. Cook*, 607 S.E.2d 459, 464 (W. Va. 2004).

In the present case, the plaintiffs concede that they do not suffer currently from any illness or disease caused by their exposure to PFOA. Instead, the plaintiffs assert that they are injured because PFOA has accumulated in their blood. The plaintiffs maintain that based on the presence of PFOA in their bodies, they suffer a significantly increased risk of

developing certain diseases, including liver disease, cholesterol abnormalities, and certain cancers, when compared to the general population's risk of developing those diseases. According to the plaintiffs, this increased risk of disease satisfies the "injury" requirement for negligence and gross negligence under West Virginia law. We disagree with this argument.

The presence of PFOA in the public water supply or in the plaintiffs' blood does not, standing alone, establish harm or injury for purposes of proving a negligence claim under West Virginia law. In such situations, a plaintiff also must produce evidence of a detrimental effect to the plaintiffs' health that actually has occurred or is reasonably certain to occur due to a present harm. *See Cook*, 607 S.E.2d at 464. Because the plaintiffs did not present such evidence to the district court, their claims of negligence and gross negligence failed as a matter of law. *See Cray Commc'ns*, 33 F.3d at 393. Accordingly, we hold that the district court did not err in awarding summary judgment to DuPont on these negligence claims.

We next consider the plaintiffs' claims of battery. In order to prove a battery under West Virginia law, a plaintiff generally must demonstrate that the defendant inflicted a harmful bodily contact on the plaintiff. *See W. Va. Fire*, 602 S.E.2d at 494. The plaintiffs in this case advance two arguments in support of their contention that they have suffered a battery under West Virginia law. They first contend that they have suffered a harmful bodily contact, within the meaning of Section 15 of the Restatement (Second) of Torts (the Restatement). Under Section 15 of the Restatement, a person suffers harmful bodily contact when there is a "physical impairment of the condition of [the] body, or physical pain or illness." Restatement (Second) of Torts § 15. Comment "a" to this provision states that the term "physical impairment" includes any alteration in the structure or function of any part of the body, even when such structural change does not cause other harm. *Id.* cmt. a.

Relying on comment "a," the plaintiffs maintain that they have suffered a battery because PFOA has been added to their blood as a result of DuPont's release of that chemical into the environment. The plaintiffs argue that even though they have not actually suffered any physical harm based on their exposure to PFOA, this "alteration in the structure" of their blood is an injury sufficient to establish a battery. Alternatively, the plaintiffs contend that the accumulation of PFOA in their blood is an injury sufficient to establish a battery under West Virginia law. *See* Restatement (Second) of Torts § 18(1)(b). We disagree with these arguments.

The plaintiffs effectively ask us to expand the tort of battery under West Virginia law to include any chemical exposure that results in potentially dangerous, detectable levels of that chemical in a person's body. The West Virginia Supreme Court of Appeals has not adopted this view and, in fact, expressly has required that a plaintiff alleging a battery demonstrate "actual physical impairment." *See Funeral Servs. by Gregory, Inc. v. Bluefield Comm. Hosp.*, 413 S.E.2d 79, 82 (W. Va. 1991) (mere exposure accompanied by fear of contracting disease is not battery), overruled on other grounds by *Courtney v. Courtney*, 437 S.E.2d 436 (W. Va. 1993). Also, the West Virginia Supreme Court of Appeals has not embraced the alternative definition of battery advanced by the plaintiffs, battery based on "offensive contact," as provided in Section 18 of the Restatement.

In the absence of such action by the highest state court in West Virginia, our role in the exercise of our diversity jurisdiction is limited. A federal court acting under its diversity jurisdiction should respond conservatively when asked to discern governing principles of state law. *See Day & Zimmermann, Inc. v. Challoner*, 423 U.S. 3, 4 (1975) (per curiam). Therefore, in a diversity case, a federal court should not interpret state law in a manner that may appear desirable to the federal court, but has not been approved by the state whose law is at issue. *See id.* Mindful of this principle, we decline

the plaintiffs' invitation to predict that the West Virginia Supreme Court of Appeals would adopt the specific provisions of the Restatement advanced by the plaintiffs. Accordingly, under existing West Virginia law, we affirm the district court's award of summary judgment to DuPont on the plaintiffs' battery claims.

We next consider the plaintiffs' claims of trespass. Under West Virginia law, to constitute a trespass, the defendant's conduct must result in an actual, nonconsensual invasion of the plaintiff's property, which interferes with the plaintiff's possession and use of that property. *Hark*, 34 S.E.2d at 352. In this case, the plaintiffs failed to produce evidence showing that the presence of PFOA in the water supplied to their homes has damaged or interfered with the plaintiffs' possession and use of their property. Because the plaintiffs were unable to produce evidence supporting this essential element of a trespass claim, the plaintiffs' trespass claims failed as a matter of law, and the district court did not err in awarding summary judgment in favor of DuPont on these claims. *See Cray Commc'ns*, 33 F. 3d at 393.

We turn now to address the plaintiffs' private nuisance claims. Under West Virginia law, a private nuisance arises when a person or entity has created a "substantial and unreasonable interference with the private use and enjoyment of another's land." *Hendricks*, 380 S.E.2d at 200. In contrast, when a defendant's conduct "unlawfully operates to hurt or inconvenience an indefinite number of persons," a public nuisance is created. *Duff v. Morgantown Energy Assocs.*, 421 S.E.2d 253, 257 (W. Va. 1992) (quoting *Hark*, 34 S.E.2d at 354).

The distinction between these two types of nuisance, however, is not simply a matter of tallying the number of people affected by a defendant's allegedly tortious conduct. As the district court recognized, the proper characterization of a nuisance as either private or public depends on the nature of the

interest affected by the defendant's conduct. *See id.* at 257 n.7.

If the only interest that is invaded is an interest shared equally by members of the public, then the alleged nuisance is public in nature. *See Int'l Shoe Co. v. Heatwole*, 30 S.E.2d 537, 540 (W. Va. 1944). Such a circumstance is precisely the situation presented here, because DuPont's allegedly tortious conduct interfered with the general public's access to clean drinking water. The fact that the water eventually was pumped into private homes did not transform the right interfered with from a public right to a private right. *See Duff*, 421 S.E.2d at 257 n.7. We therefore conclude, as the district court did, that when a release of pollutants directly affects a municipal water supply and does not interfere with any private water source, such as a well drilled on private property, the presence of the pollutants in the public water supply will not support a private nuisance claim. Thus, we hold that the district court did not err in entering summary judgment for DuPont on the plaintiffs' private nuisance claims. And, for the several reasons stated above, we affirm the district court's award of summary judgment to DuPont on the plaintiffs' individual claims of negligence, gross negligence, battery, trespass, and private nuisance. Additionally, as a result of our holding that the district court properly awarded summary judgment to DuPont on the above individual claims, we do not reach the separate issue of the timeliness of the plaintiffs' request for class certification of these claims as that issue is now moot.

## B.

We next address the plaintiffs' public nuisance claims. Ordinarily, a private citizen is not permitted to bring suit to enjoin a public nuisance unless he or she has suffered a harm that is "special." *Int'l Shoe*, 30 S.E.2d at 540. A "special" harm is different in kind from any harm born by the population at large. *See Hark*, 34 S.E.2d at 354; *Int'l Shoe*, 30 S.E.2d at 540; *Curry v. Boone Timber Co.*, 105 S.E. 263, 264 (W.

Va. 1920). Thus, when a private citizen's claim of public nuisance is not based on an injury that is "special" in nature, such claim generally is insufficient as a matter of law. *Int'l Shoe*, 30 S.E.2d at 540.

In this case, the district court concluded that the plaintiffs did not satisfy the "special injury" requirement for a claim of public nuisance. This requirement, that a private individual seeking to maintain a claim of public nuisance allege an injury different in kind from that suffered by the general population, is a principle well-established under West Virginia law. *See Hark*, 34 S.E.2d at 354; *Int'l Shoe*, 30 S.E.2d at 540; *Curry*, 105 S.E. at 264. This limitation prevents multiple actions seeking damages for minor injuries suffered by various members of the public.

The plaintiffs contend, however, that this concern is unwarranted here because they seek to enjoin a public nuisance on behalf of a class, rather than on an individual basis for private injuries suffered. Thus, the plaintiffs urge that we apply Section 821C(2)(c) of the Restatement, which has created an exception to the "special injury" requirement for class actions brought to abate a public nuisance.

The district court correctly rejected this position advocated by the plaintiffs. The district court explained, and we agree, that although the Supreme Court of Appeals of West Virginia generally has followed the Restatement's guidance in developing West Virginia tort law and has recognized the important function of public nuisance actions in remedying environmental contamination, there is "no [West Virginia statutory or common law] authority [suggesting] a class action exception to the special-injury rule absent legislative measures." *Rhodes*, 657 F. Supp. 2d at 768 n.14.

The plaintiffs maintain, nonetheless, that the district court's holding is erroneous because it could unduly restrain the filing of collective actions to abate public nuisances. We are not

persuaded by this argument, because it fails to acknowledge that the Supreme Court of Appeals of West Virginia has not recognized a class action exception to the "special injury" requirement. We decline to recognize such an exception in the first instance because, as we have stated, a federal court in the exercise of its diversity jurisdiction should act conservatively when asked to predict how a state court would proceed on a novel issue of state law. *See Day & Zimmermann*, 423 U.S. at 4.

The plaintiffs alternatively maintain, however, that they have asserted a "special injury" for purposes of establishing a public nuisance, because they have suffered a personal injury or property damage that "normally [is] different in kind" from that suffered by other members of the public. We find no merit in this argument, because it is not supported either by the facts alleged in the plaintiffs' complaint or by West Virginia law. Moreover, because the plaintiffs allege that all the water customers exposed to PFOA since 2005 have suffered the same personal injury, the plaintiffs' own pleadings refute their contention of "special injury." Accordingly, for all the reasons discussed above, we affirm the district court's entry of summary judgment for DuPont and denial of class certification on the plaintiffs' public nuisance claims.

## C.

The plaintiffs separately argue that even if they have failed to establish an "injury" for purposes of proving the traditional common law tort claims, they still may obtain medical monitoring relief incident to the traditional common law tort claims by showing that DuPont's tortious conduct caused them to suffer an increased future risk of developing certain diseases. In support of this argument, the plaintiffs contend that in its *Bower* decision, the West Virginia Supreme Court of Appeals relaxed the "injury" requirement for plaintiffs seeking injunctive relief in the form of medical monitoring.

Under this asserted interpretation of *Bower*, the plaintiffs contend, for example, that they may recover medical monitoring as a remedy for battery without demonstrating a harmful bodily contact, provided that they can show an increased future risk of developing diseases because of DuPont's tortious conduct.

We disagree with this argument. The decision in *Bower* did not relax the standard for establishing an "injury" for proof of the traditional common law torts. Instead, the *Bower* decision recognized an independent tort claim for medical monitoring, which permits a plaintiff to recover the costs of diagnostic testing for diseases that may develop in the future as a result of a defendant's conduct. *Bower*, 522 S.E.2d at 431. The "injury" required to prove a medical monitoring claim is a "significantly increased risk of contracting a particular disease relative to what would be the case in the absence of exposure." *Id.* at 433. Thus, under the decision in *Bower*, a plaintiff seeking medical monitoring as an element of damages for a traditional common law tort must still prove the required elements of that tort to obtain medical monitoring relief.

### III.

Finally, we address DuPont's argument that we lack appellate jurisdiction to address the merits of the one remaining issue, namely, the plaintiff's appeal of the denial of class certification of their medical monitoring claims. DuPont asserts that the plaintiffs no longer have standing to advance this argument on appeal because, by voluntarily dismissing their individual claims for medical monitoring, the plaintiffs abandoned their interest in litigating the certification question. As a result, DuPont contends, the plaintiffs have no personal stake in this issue and do not satisfy the requirements for Article III standing.

In response, the plaintiffs maintain that litigants routinely are permitted to dismiss various claims in order to appeal

other claims and, that under Supreme Court precedent, this Court can review the denial of class certification for a particular claim even though no plaintiff presently is advancing individual claims asserting that cause of action. The plaintiffs further argue that by its plain terms, their stipulated dismissal applied only to their individual medical monitoring claims. Thus, the plaintiffs contend that they did not abandon their stake in the certification question.

We begin our analysis by stating some general principles of standing. Article III of the Constitution limits the jurisdiction of the federal courts to the consideration of "cases" and "controversies." U.S. Const. art. III, § 2. A case must be brought by a party with a "personal stake" in the litigation. *See U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 396 (1980); *United States v. Hardy*, 545 F.3d 280, 283 (4th Cir. 2008). This personal interest must continue throughout the litigation, including on appeal. *Hardy*, 545 F.3d at 283. Circumstances may change while a case is pending, thereby leaving a plaintiff without the personal stake necessary to maintain Article III standing. For example, claims can expire, or parties can settle or dismiss their claims entirely. In such situations, the district court or appellate court must dismiss the case for lack of subject-matter jurisdiction. *See, e.g.*, *Distaff, Inc. v. Springfield Contracting Corp.*, 984 F.2d 108, 110-11 (4th Cir. 1993)(stating general rule that plaintiff may not appeal dismissal, with prejudice, obtained on his or her own motion).

Application of standing principles is more difficult, however, when a plaintiff seeks to assert class claims on behalf of others. Generally, a class representative not only has a "personal stake" in the substantive claim he or she asserts, but also a distinct procedural right to represent the interests of similarly situated individuals. *Geraghty*, 445 U.S. at 402. This second, representative interest sometimes gives a putative class representative a sufficient "stake" in the class certification question to appeal an adverse certification ruling even after the putative class representative's claim is mooted by

intervening events. *See id.*; *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 340 (1980).

Two conditions must be met, however, to retain Article III jurisdiction. The "imperatives of a dispute capable of judicial resolution [must be] sharply present," and there must be "self-interested parties vigorously advocating opposing positions." *Geraghty*, 445 U.S. at 403. These requirements ensure that a putative class representative maintains a sufficiently concrete interest in the certification question to satisfy the case-or-controversy requirement of Article III. *See, e.g.*, *Roper*, 445 U.S. at 336-37, 338 n.9 (putative class plaintiff continually asserted interest in shifting costs of litigation to class members and, thus, had standing to appeal adverse certification ruling after individual claims were mooted).

To date, the Supreme Court has applied this narrow exception to the "personal stake" requirement only in cases involving involuntary dismissals. *See Geraghty*, 445 U.S. at 403; *Roper*, 445 U.S. at 330. The Supreme Court has not addressed the present issue, namely, whether Article III standing requirements are satisfied when a putative class representative who has voluntarily settled or dismissed his or her claims thereafter appeals a denial of class certification. *See Geraghty*, 445 U.S. at 404 n.10.

This Court has held that a putative class representative who voluntarily settles his case and releases all his individual claims, under language providing for the release of "any and all" monetary claims "including any claims for . . . compensation [that he or she] may have as a member/representative of the putative class," may not thereafter appeal from an adverse class certification ruling. *Toms v. Allied Bond & Collection Agency, Inc.*, 179 F.3d 103, 105-06 (4th Cir. 1999). Unlike the settlement agreement in *Toms*, however, the language of the stipulated dismissal before us did not mention the plaintiffs' class claims. Rather, the full text of the dismissal stated, "Pursuant to Civil Rule 41(a)(1), the parties hereby stipulate

to Plaintiffs' voluntary dismissal, with prejudice, of their remaining medical monitoring claims in this case and stipulate that each party shall bear its own expenses, costs and fees." At the time of this stipulation, only the plaintiffs' individual medical monitoring claims were pending in the district court. Thus, the term "remaining" necessarily limited the scope of the dismissal to those individual claims.

Considering this language and the voluntary nature of the plaintiffs' dismissal, we must determine whether the plaintiffs satisfy the Article III standing requirements discussed above. Other circuit courts addressing this issue have reached different conclusions on the question whether a plaintiff may voluntarily settle or dismiss his or her individual claims and still appeal a certification denial. Some courts have held that standing is maintained when a named plaintiff expressly reserves the right to appeal a certification denial. *See Richards v. Delta Air Lines, Inc.*, 453 F.3d 525 (D.C. Cir. 2006) (express reservation of class claim preserves standing of class representative to appeal certification denial); *Dugas v. Trans Union Corp.*, 99 F.3d 724 (5th Cir. 1996) (reservation of right sufficient to give putative class representative who settles individual claims standing to appeal denial of class certification). *But see*, *Narouz v. Charter Commc'ns, LLC*, 591 F.3d 1261 (9th Cir. 2010) (putative representative retains standing to appeal unless releases interest in class claims in settlement agreement). Other courts have held that even an express reservation of right is not sufficient to satisfy Article III standing requirements. *See Muro v. Target Corp.*, 580 F.3d 485 (7th Cir. 2009) (recitation in settlement agreement that plaintiff reserves right to appeal denial of class certification not sufficient to create concrete interest in class certification issue that *Roper* requires); *Anderson v. CNH U.S. Pension Plan*, 515 F.3d 823 (8th Cir. 2008) (same).

Although several of these cases held that the language of a plaintiff's settlement agreement is determinative of that plaintiff's "stake" in an appeal, we focus our review on the stand-

ing requirements of Article III. Applying the principles set forth by the Supreme Court, we conclude that when a putative class plaintiff voluntarily dismisses the individual claims underlying a request for class certification, as happened in this case, there is no longer a "self-interested party advocating" for class treatment in the manner necessary to satisfy Article III standing requirements. *See Geraghty*, 445 U.S. at 403. Thus, we hold that we lack jurisdiction to decide the issue whether the district court abused its discretion in denying the plaintiffs' request for class certification of their medical monitoring claims.

## IV.

In conclusion, we affirm the district court's award of summary judgment to DuPont on all the plaintiffs' traditional common law tort claims, namely, the claims of negligence, gross negligence, battery, trespass, private nuisance, and public nuisance. We do not address the separate matter of the district court's denial of class certification of these traditional common law tort claims as these issues are now moot. Finally, we dismiss the plaintiffs' appeal of the district court's class certification ruling on their medical monitoring claims for lack of jurisdiction.

*AFFIRMED IN PART;*
*DISMISSED IN PART*