JOHN A. LEPOSKY ET AL. *v.* DANIEL FENTON ET AL.
(AC 26869)

Schaller, Bishop and DiPentima, Js.

Argued December 1, 2006—officially released April 24, 2007

*James F. McLaughlin*, for the appellant (defendant Tammy Fenton).

*Francis A. Teodosio*, for the appellees (plaintiffs).

*Opinion*

SCHALLER, J. The defendant Tammy Fenton[1] appeals from the judgment of the trial court, rendered after a trial to the court, in favor of the plaintiffs, John A. Leposky and Diane Leposky, on the defendant's counterclaim. On appeal, the defendant claims that the court improperly expanded the plaintiffs' easement through the doctrine of reasonable use. We conclude that the court improperly expanded the easement and, accordingly, reverse the judgment of the trial court.[2]

---

[1] The named defendant, Daniel Fenton, is no longer a party to this action. We therefore refer in this opinion to Tammy Fenton as the defendant.

[2] On appeal, the defendant also claims that the court improperly granted the plaintiffs easement rights that they had not pleaded and failed to reform the plaintiffs' deed to reflect an easement for ingress and egress only. Because we reverse the judgment of the trial court on the ground that it improperly expanded the plaintiffs' easement, we decline to reach the issue of whether the court improperly granted the plaintiffs rights under their easement that were not pleaded in their complaint. We further decline to consider the issue of whether the court improperly failed to reform the plaintiffs' deed. The defendant raised this issue in her trial briefs and again during reargument of the court's rulings. Although the court orally denied the defendant's request for reformation of the deed, the defendant failed to plead this cause of action in her complaint. "It is axiomatic that the parties are bound by their pleadings . . . and it is equally clear that [t]he court is

The following facts are relevant to the defendant's appeal. The parties own adjoining residential parcels in Shelton. The plaintiffs own 38 Fairfield Avenue, designated as lot 403. The defendant owns 36 Fairfield Avenue, which is situated to the east of the plaintiffs' parcel and designated as lot 402. Both parcels border a public street. The plaintiffs' parcel is benefited by an express right-of-way over the defendant's parcel for a driveway for purposes of ingress and egress.

The plaintiffs and the defendant trace title to a common grantor, Anne Dziamba. Dziamba conveyed the property as one parcel to Angelo Marino, who subsequently divided the property and conveyed it separately. On May 24, 1955, Marino conveyed lot 402 subject to "a right of way along a portion of the Northerly boundary of said Lot 402 for a driveway for ingress and egress from the rear portions of Lot 403 . . . ." On June 3, 1955, he conveyed lot 403 with the right-of-way, but also included in the deed "automobile parking privilege[s]." All subsequent deeds conveying the respective lots contained the same language as the original deeds.

The plaintiffs purchased lot 403 on July 28, 1989. The previous owners of lot 403 had used the right-of-way not only for ingress and egress, but also to park their vehicles and to store a boat thereon. The plaintiffs also parked vehicles and stored a boat on the right-of-way under the assumption that the language in their deed granting a right-of-way as well as automobile parking privileges afforded them such rights. For a period of time, the owners of the servient estate, lot 402, did not dispute the use of the right-of-way for vehicle parking and boat storage. In 1997, however, Adeline Margiano, the defendant's decedent, by letter sent by her attorney,

not permitted to decide issues outside of those raised in the pleadings . . . ." (Citation omitted; internal quotation marks omitted.) *Russell* v. *Russell*, 91 Conn. App. 619, 634, 882 A.2d 98, cert. denied, 276 Conn. 924, 925, 888 A.2d 92 (2005).

informed the plaintiffs that the use of the right-of-way for purposes other than ingress and egress exceeded the grant of the easement as stated in the chain of title conveying lot 402.[3] Thereafter, in 2000, the plaintiffs received legal notice from Margiano disputing their use of the easement for parking and storage.

In 2001, the plaintiffs filed a complaint claiming title to the easement through adverse possession, a right to an exclusive easement and abandonment of the right-of-way by the defendant. The defendant filed a counterclaim alleging trespass and harassment and seeking injunctive relief as well as money damages. In its memorandum of decision, issued on May 16, 2005, the court rendered judgment in favor of the defendant on the plaintiffs' complaint and for the plaintiffs on the defendant's counterclaim. In ruling on the counterclaim, the court determined that the plaintiffs' use of the right-of-way was "not unreasonable [nor] . . . limited to the right of ingress and egress" because "[r]easonable uses may be permitted though not contemplated by the original grant." The court, in essence, concluded that although the express grant of automobile parking privileges in the chain of title of lot 403 has no legal effect because it was imposed after lot 402 had been conveyed separately, the plaintiffs' use of the right-of-way for parking and storage constitutes a reasonable use within the scope of the easement for ingress and egress. In articulating its decision, the court explained that it had determined that "the plaintiffs' present use of the property burdened by the easement is within the authority granted by the easement." This appeal followed.

The defendant claims that the court improperly expanded the plaintiffs' easement for ingress and egress through the doctrine of reasonable use to include the

---

[3] Upon Margiano's death, the defendant acquired her interest in lot 402 through a certificate of devise.

right to park vehicles and to store a boat on the right-of-way. The defendant argues that the language of the deed conveying lot 402 and creating the easement unambiguously limits the plaintiffs' rights with respect to the right-of-way to ingress and egress. We agree.

We begin by setting forth the applicable standard of review. For a determination of the character and extent of an easement created by deed we must "look to the language of the deed, the situation of the property and the surrounding circumstances in order to ascertain the intention of the parties. . . . The language of the grant will be given its ordinary import in the absence of anything in the situation or surrounding circumstances which indicates a contrary intent." (Citation omitted.) *Mackin* v. *Mackin*, 186 Conn. 185, 189, 439 A.2d 1086 (1982). "[T]he determination of the intent behind language in a deed, considered in the light of all the surrounding circumstances, presents a question of law on which our scope of review is plenary." (Internal quotation marks omitted.) *Mulla* v. *Maguire*, 65 Conn. App. 525, 531, 783 A.2d 93, cert. denied, 258 Conn. 934, 785 A.2d 229 (2001). In determining the scope of an express easement, the language of the grant is paramount in discerning the parties' intent. In order to resolve ambiguities in the language, however, the situation and circumstances existing at the time the easement was created may also be considered. See 1 Restatement (Third), Property, Servitudes § 4.1 and comment (d), pp. 496–97, 499 (2000).[4]

---

[4] Section 4.1 of the Restatement (Third) Property, Servitudes, states, "(1) A servitude should be interpreted to give effect to the intention of the parties ascertained from the language used in the instrument, or the circumstances surrounding creation of the servitude, and to carry out the purpose for which it was created." Comment (d) further provides in relevant part that "[i]n interpreting expressly created servitudes, the expressed intention of the parties is of primary importance. . . . Because servitudes are interests in land, subject to the Statute of Frauds and the recording acts, heavy emphasis is placed on the written expressions of the parties' intent. The fact that servitudes are intended to bind successors to interests in the land, as well as the contracting parties, and are generally intended to last for an

We conclude, on the basis of the clear language of the deed, that the plaintiffs' rights under the easement are limited to ingress and egress and do not include the right to use the right-of-way to park vehicles or to store a boat thereon. In *Hall* v. *Altomari,* 19 Conn. App. 387, 391, 562 A.2d 574 (1989), this court concluded that language granting a right-of-way for purposes " 'to and from' " limited the plaintiff's rights to ingress and egress, reasoning that the language was not in general terms and, therefore, could not be construed to include the right to park vehicles. Indeed, it is well established that "a right-of-way *granted in general terms may be used for any purpose reasonably necessary* for the party entitled to use it." (Emphasis added.) *Hagist* v. *Washburn,* 16 Conn. App. 83, 86, 546 A.2d 947 (1988); see also *Mackin* v. *Mackin,* supra, 186 Conn. 189 (easement granted "in general terms without any restrictions as to its use . . . 'is to be construed as broad enough to permit any use which is reasonably connected with the reasonable use of the land to which it is appurtenant' "). In the present case, the language creating the right-of-way explicitly limits the plaintiffs' easement rights to ingress and egress. This court "will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity." (Internal quotation marks omitted.) *Pender* v. *Matranga,* 58 Conn. App. 19, 25, 752 A.2d 77 (2000). Because the right-of-way is not granted in general terms, the court's reliance on the doctrine of reasonable use to expand the easement to include parking and storage rights was misplaced.[5]

---

indefinite period of time, lends increased importance to the writing because it is often the primary source of information available to a prospective purchaser of the land."

[5] We note that in *Hagist* v. *Washburn,* supra, 16 Conn. App. 86, this court concluded that a right-of-way " 'by foot or vehicle, over, upon and across' " the servient estate included a right to park. *Hagist* is distinguishable from the present case, however, because the general language of the grant enabled the court to consider reasonable uses contemplated thereby.

Moreover, in the present case, the plaintiffs' consistent use of the right-of-way to park their vehicles and to store their boat, as well as that use by their predecessors in title, was with the implied permission of the owners of lot 402, the servient estate, and therefore did not result in an expansion of the easement rights. Prior to 1997, the owners of lot 402 did not dispute the use of the right-of-way by the plaintiffs or the previous owners of their property for parking and boat storage. In their brief, the plaintiffs acknowledge that their use of the right-of-way in this manner was "with the knowledge and permission of the defendant and the defendant's predecessor in title." The permission by the owners of the servient estate to allow the plaintiffs to use the right-of-way in a manner beyond the scope of the original easement grant was freely revocable. See 4 R. Powell, Real Property (2005) § 34.25. Consequently, the plaintiffs' ability to use the right-of-way for purposes other than ingress and egress ended when the permission allowing such use was revoked.

In sum, we conclude that the court improperly expanded the plaintiffs' easement rights to include the right to use the right-of-way for vehicle parking and boat storage when such use was not contemplated by the original grant.

The judgment is reversed and the case is remanded for further proceedings consistent with this opinion. Specifically, the trial court is instructed to consider the issues raised in the defendant's counterclaim.[6]

In this opinion the other judges concurred.

---

[6] The defendant also claims on appeal that the court improperly concluded, in rendering judgment on the counterclaim, that the plaintiffs' use of the right-of-way did not constitute a trespass and, consequently, failed to award appropriate damages. The defendant requests this court to conclude that the plaintiffs committed a trespass and to order a hearing in damages. We have addressed the defendant's claims in our remand instruction to the trial court.