******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

NPC OFFICES, LLC *v.* WILLIAM KOWALESKI ET AL.
(AC 34612)

DiPentima, C. J., and Mullins and Mihalakos, Js.

*Argued May 22—officially released August 26, 2014*

(Appeal from Superior Court, judicial district of
Middlesex, Abrams, J.)

*Michael S. Taylor*, with whom, on the brief, were
*William F. Gallagher* and *Hugh D. Hughes*, for the
appellant-appellee (plaintiff).

*Michelle M. Seery*, with whom was *William J. O'Sulli-van*, for the appellees-appellants (defendants).

*Opinion*

MIHALAKOS, J. This appeal arises from a dispute between owners of adjoining commercial properties over the use of a driveway. The plaintiff, NPC Offices LLC, appeals from the judgment of the trial court rendered in favor of the defendants, William Kowaleski, Sharon Kowaleski, and 184–188 South Main Street, LLC. The plaintiff claims that the trial court improperly determined (1) that the plaintiff's property was used for purposes other than residential or professional offices, (2) that such use permanently terminated the plaintiff's easement over the driveway, (3) that the plaintiff's breach of a right-of-way agreement was material, and (4) that termination of the easement is not barred by the doctrine of disproportionate forfeiture. On cross appeal, the defendants appeal from the judgment of the court in favor of the plaintiff on the defendants' counterclaims of trespass and nuisance. The defendants claim that the court incorrectly concluded that (1) the defendants failed to demonstrate their exclusive possession of a disputed portion of the driveway, and (2) the plaintiff's use of the driveway was not unreasonable. We affirm the judgment of the court.

The following facts, as found by the court, are relevant to this appeal. The plaintiff, a limited liability company of which Marc Aronson is the sole member, owns an office building located at 192 South Main Street in Middletown. Aronson operates a psychologist office. The defendant 184–188 South Main Street, LLC, a limited liability company under the ownership and control of the defendants William Kowaleski and Sharon Kowaleski, owns an office building located at 184–188 South Main Street, which is situated on property abutting the plaintiff's property. The defendants operate a hair salon. The buildings are separated by a driveway, located on the defendants' property, which provides access to a parking area behind both buildings.

The plaintiff's claimed right of access to the driveway stems from an agreement entered into by previous owners of the two properties. Created in 1960, the agreement referred to the owners of the property located at 184–188 South Main Street as the "First Parties" and the owners of the property at 192 South Main Street as the "Second Parties." It provided that "the First Parties grant to the Second Parties and unto the survivor of them, and unto such survivor's heirs and assigns forever the right (in common with the First Parties' heirs and assigns) to pass and re-pass by vehicle or on foot over the entire length of said driveway running from South Main Street to the garages on the First Parties' premises, except that, in the event that [192 Main South Street] shall be used for purposes other than residential or professional offices, the Second Parties' right to use the said driveway shall terminate." The agreement was recorded and was the sole instrument

in either property's chain of title governing the rights and obligations of the parties as they relate to the driveway. The garages referenced in the agreement no longer existed at the time of trial, but the driveway remained intact.

In 1990, the defendants acquired their property and the plaintiff acquired its property in 2008. Soon after, the use of the driveway and the parking area behind the offices became a source of frequent disputes, leading to an acrimonious relationship between the parties. On or about September 6, 2008, the defendants constructed an iron fence behind the buildings along the properties' common boundary in an effort to separate the properties' respective parking areas. The fence severely restricted access to and maneuverability in the parking area behind the plaintiff's property.

Thereafter, the plaintiff commenced the present action and filed a complaint dated September 8, 2008. The plaintiff's operative complaint asserted, among other things, a quiet title claim asking the court to find that the erection of the fence violated the terms of the agreement and to clarify the extent of the right-of-way, and a claim seeking an injunction restoring the plaintiff's rights under the agreement. The defendants denied the plaintiff's claims and raised special defenses, including an assertion that the plaintiff's property had been used for purposes other than professional offices or residential uses, thus terminating the right-of-way agreement. The defendants also asserted counterclaims, including, among other things, claims of quiet title asking the court to find that the agreement had been terminated, civil trespass and private nuisance. The plaintiff denied the defendants' counterclaims and raised special defenses.

After a trial, the court found that the right-of-way agreement created an express easement for the benefit of the plaintiff's property. The court found that this easement was in effect until the plaintiff's property was used by a mortgage brokerage, a home health care agency and an appliance delivery coordination service. The court concluded that the operation of these businesses constituted use of the property for purposes other than residential or professional offices, thus terminating the easement. The court further found that no prescriptive or implied easement existed on behalf of the plaintiff. The court also rejected the defendants' counterclaims of trespass and nuisance. This appeal followed.[1]

I

We begin with the plaintiff's claims regarding the existence of an express easement over the defendant's driveway. The plaintiff claims that the trial court improperly determined (1) that the plaintiff's property was used for purposes other than residential or profes-

sional offices, (2) that such use permanently terminated the easement over the driveway, (3) that the plaintiff's breach of the right-of-way agreement was material, and (4) that termination of the easement is not barred by the doctrine of disproportionate forfeiture.[2] We are not persuaded.

This case involves an express easement. "[T]he determination of the intent behind language in [an easement agreement], considered in the light of all the surrounding circumstances, presents a question of law on which our scope of review is plenary." (Internal quotation marks omitted.) *Leposky* v. *Fenton*, 100 Conn. App. 774, 778, 919 A.2d 533 (2007). "For a determination of the character and extent of an easement created by [agreement] we must look to the language of the [agreement], the situation of the property and the surrounding circumstances in order to ascertain the intention of the parties. . . . The language of the grant will be given its ordinary import in the absence of anything in the situation or surrounding circumstances which indicates a contrary intent. . . . In order to resolve ambiguities in the language, however, the situation and circumstances existing at the time the easement was created may also be considered." (Citations omitted; internal quotation marks omitted.) Id.

A

First, the plaintiff claims that the trial court improperly determined that the plaintiff's property was used for purposes other than residential or professional offices. He argues that the mortgage brokerage, home health care agency and appliance delivery coordination service all used the property as professional offices. We disagree.

In reviewing this claim, we defer to the trial court's factual findings regarding the operation of the businesses that were found to have terminated the easement. In order to determine whether those operations constituted uses "for purposes other than residential or professional offices," in violation of the easement, we look to the dictionary definitions of the relevant terms. See *Zirinsky* v. *Carnegie Hill Capital Asset Management, LLC*, 139 Conn. App. 706, 719–20, 58 A.3d 284 (2012) (applying dictionary definitions to determine meaning of "permanent structure" in easement and applying court's findings as to structure's character and dimensions to determine whether structure constituted permanent structure).

It is undisputed that 192 South Main Street was used for nonresidential purposes and, therefore, the question before us is whether the businesses operated out of the property qualified as "professional offices." "Professional" is defined as "[a] person who belongs to a learned profession or whose occupation requires a high level of training and proficiency." Black's Law Diction-

ary (9th Ed. 2009). "Office" is defined as "[a] place where business is conducted or services are performed." Black's Law Dictionary (9th Ed. 2009). Combining these definitions, the unambiguous meaning of "professional office" as used in the easement is a place where business is conducted or services are performed by persons who belong to a learned profession or whose occupation requires a high level of training and proficiency.[3]

The trial court found that a mortgage brokerage, home health care agency and appliance delivery coordination service had been operated out of the plaintiff's property. The court further found that "each can be operated without a prolonged course of specialized instruction and study." (Internal quotation marks omitted.) Applying these undisputed findings to the definition set forth previously, we conclude that the court correctly determined that these businesses did not qualify as professional offices, as a high level of training and proficiency was not required for their operation.

B

Next, the plaintiff claims that the trial court improperly determined that the property being used for purposes other than residential or professional offices permanently terminated the easement over the driveway. Specifically, he argues that, in accordance with the plain language of the easement, the plaintiff's right to make use of the driveway merely was suspended during the time period of improper use and since has been restored. We are not persuaded.

"[A]n easement may be created which will terminate upon the happening of an event or contingency, or which may be terminated on the occurrence, [or] breach . . . of a condition . . . and the limitation or condition will ordinarily be enforced unless it is not sufficiently definite . . . or is contrary to law or public policy. . . . When the granting of an easement is conditioned on a particular event, the easement is automatically terminated when that event occurs." (Citations omitted; internal quotation marks omitted.) *Eis* v. *Meyer*, 17 Conn. App. 664, 668, 555 A.2d 994, aff'd, 213 Conn. 29, 566 A.2d 422 (1989).

Here, the agreement creating the easement expressly stated that "in the event that [192 Main South Street] shall be used for purposes other than residential or professional offices, the Second Parties' right to use the said driveway *shall terminate*." (Emphasis added.)

As stated previously, we look to the dictionary definition to determine the commonly approved usage of the terms of an easement. Terminate means "[t]o put an end to; to bring to an end." Black's Law Dictionary (9th Ed. 2009). By its clear and unambiguous terms, the easement was expressly designed to be extinguished if the dominant property was used in a way other than

those specified. As discussed in part I A of this opinion, that condition came to pass when the property was occupied by various nonprofessional businesses. Accordingly, the easement was terminated automatically, with no action by the defendants required to effect said termination.[4]

C

Next, the plaintiff claims that the trial court improperly determined that the plaintiff's breach of the right-of-way agreement was material. He argues that any breach of the agreement was technical because it was not wilful and the court's finding to the contrary was clearly erroneous. We conclude that whether the use of the property for nonprofessional purposes constituted a material breach of the agreement is irrelevant and, therefore, we do not consider the plaintiff's claim.

In its memorandum of decision, the court stated: "The court concurs with precedent from other jurisdictions that technical breaches of express easements should not result in termination. . . . However, the court considers the breach at issue to be material rather than technical and that the [right-of-way] [a]greement has terminated." (Citation omitted.)

Our review of controlling precedent finds no support for the proposition that an easement subject to a condition subsequent can be terminated only by a material breach. In *Eis* v. *Meyer*, supra, 17 Conn. App. 666–67, this court considered an easement that was subject to termination if any building on the dominant property was enlarged. The trial court had determined that, although a building on the dominant property been enlarged, the easement was not terminated because the enlargement was "insignificant." Id., 667. This court reversed the judgment of the trial court, holding that the plain language of the easement controlled and, thus, that the easement was terminated by any enlargement, no matter its significance. Id., 669–70.

In the present case, any use of the 192 South Main Street for purposes other than those expressed in the easement was sufficient to terminate the easement, regardless of whether the use could be characterized as merely a technical breach. Accordingly, we need not reconsider the court's determination that the breach in question was material, as it has no bearing on the outcome of the matter at hand.

D

Finally, the plaintiff claims that the trial court should have determined that termination of the easement was barred by the doctrine of disproportionate forfeiture. We disagree, as this doctrine does not apply to the circumstances of this case.

The doctrine of disproportionate forfeiture was enunciated by Chief Justice Peters in *Aetna Casualty &*

*Surety Co.* v. *Murphy*, 206 Conn. 409, 538 A.2d 219 (1988), overruled on other grounds by *Arrowood Indemnity Co.* v. *King*, 304 Conn. 179, 39 A.3d 712 (2012). The doctrine holds that "in appropriate circumstances, a contracting party, despite his [or her] own default, may be entitled to relief from the rigorous enforcement of contract provisions that would otherwise amount to a forfeiture." Id., 414; see also 2 Restatement (Second) Contracts § 229, p. 185 (1981) ("[t]o the extent that the non-occurrence of a condition would cause disproportionate forfeiture, a court may excuse the non-occurrence of that condition unless its occurrence was a material part of the agreed exchange"). In *Murphy*, the doctrine was applied in the context of an insured's failure to comply with the notice requirements of an insurance contract, leading to a denial of coverage. *Aetna Casualty & Surety Co.* v. *Murphy*, supra, 417. The court held that this loss of coverage constituted a disproportionate forfeiture unless it was shown that the insurer was materially prejudiced by the lack of timely notice. Id., 418. This conclusion was premised on consideration of the following factors: (1) that insurance contracts are contracts of adhesion, (2) that coverage would be lost despite dutiful payment of insurance premiums, and (3) that lack of timely notice would not necessarily cause prejudice by depriving an insurer of a fair opportunity to investigate an accident or claim. Id., 415–16. Since *Murphy*, the doctrine has been applied by our appellate courts almost exclusively in the insurance context. See *Arrowood Indemnity Co.* v. *King*, supra, 201; *National Publishing Co., Inc.* v. *Hartford Fire Insurance Co.*, 287 Conn. 664, 675, 949 A.2d 1203 (2008); but see *Twenty-Four Merrill Street Condominium Assn., Inc.* v. *Murray*, 96 Conn. App. 616, 623, 902 A.2d 24 (2006) (discussing doctrine of disproportionate forfeiture in context of foreclosure of statutory lien).

We are not persuaded that the doctrine of disproportionate forfeiture is applicable to the present case. First, no evidence was presented at trial to suggest that the easement was a contract of adhesion or that the owners of 192 South Main Street were in any way lacking in bargaining power when agreeing to the terms of the agreement. Second, unlike insurance policy holders who paid premiums but never received coverage, the owners of 192 South Main Street received the benefit of using the easement for several decades before its termination. Finally, for the reasons set forth in part I C of this opinion, we are convinced that prejudice is not a proper consideration in the context of express easements.

With these factors in mind, we conclude that the doctrine of disproportionate forfeiture is not applicable to the present case. Accordingly, the court acted properly in refusing to maintain the easement on this ground.

## II

We now turn to the defendants' claims on cross appeal. They claim that the court erred in rendering judgment for the plaintiff on their counterclaims of trespass and nuisance. As the defendants failed to present any evidence as to damages related to these counts, we decline to review the merits of this claim.

At trial, the defendants asserted counterclaims of civil trespass and private nuisance, seeking remedies of a judgment declaring the easement to have been terminated and monetary damages. Because such a declaratory judgment was rendered in their favor at trial, the defendants make no claim on appeal with respect to equitable relief for these causes of action.[5]

With regard to monetary damages, "[i]t is axiomatic that the burden of proving damages is on the party claiming them. . . . When damages are claimed they are an essential element of [that party's] proof and must be proved with reasonable certainty. . . ." (Internal quotation marks omitted.) *Ulbrich* v. *Groth*, 310 Conn. 375, 441, 78 A.3d 76 (2013). Without any showing as to how the alleged trespass and nuisance diminished the value of the defendants' property or necessitated financial expenditure on their part, the defendants, at best, would be entitled to nominal damages. See *Kelly* v. *Ivler*, 187 Conn. 31, 47, 450 A.2d 817 (1982).

In this case, the defendants failed to present any evidence of damages at trial, a fact conceded by the defendants' counsel at oral argument before this court. Therefore, a reversal of the court's conclusion rejecting the defendants' trespass and private nuisance claims would result only in an award of nominal damages to the defendants. Our courts routinely have refused to reverse a judgment and remand for a new trial when a party is found to have prevailed on a claim but is not awarded any damages. See, e.g., *Hughes* v. *Lamay*, 89 Conn. App. 378, 386 n.7, 873 A.2d 1055 ("[a]lthough the return of a plaintiff's verdict established a technical legal injury that entitled the plaintiff to at least nominal damages, this court as a general rule will not reverse and grant a new trial for a mere failure to award nominal damages" [internal quotation marks omitted]), cert. denied, 275 Conn. 922, 883 A.2d 1244 (2005). For similar reasons of judicial economy, given the circumstances of this case, we decline to consider the defendants' claims that if successful would entitle them only to nominal damages.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Subsequent to the plaintiff's filing of this appeal, the defendants filed a motion for articulation, which the court denied. The defendants subsequently filed a motion for review with this court. On September 26, 2012, this court granted the motion for review and granted in part the relief requested, ordering the trial court to articulate whether it found that the strip of land between the concrete pad and the parties' common boundary line was part

of the driveway identified in the original right-of-way agreement. In an October 1, 2012 memorandum of decision, the court explained that it did find that portion of land to be a part of the driveway.

[2] The plaintiff also argues for the first time on appeal that the defendants waived their right to claim termination of the easement. The plaintiffs seek review of this unpreserved claim pursuant to the plain error doctrine codified at Practice Book § 60-5. Reversal pursuant to the plain error doctrine is "an extraordinary remedy used by appellate courts to rectify errors committed at trial that, although unpreserved, are of such monumental proportion that they threaten to erode our system of justice and work a serious and manifest injustice on the aggrieved party." *State* v. *Myers*, 290 Conn. 278, 289, 963 A.2d 11 (2009). The plaintiff has not demonstrated that such a remedy is appropriate in the present case, and therefore we decline to review the plaintiff's waiver claim.

[3] The plaintiff asks us to adopt a broader definition of "professional office" that allows for any noncommercial business to be considered professional in nature. As he has failed to identify any authority, legal or otherwise, for his suggested definition, we decline to do so.

[4] The plaintiff provides no Connecticut authority for the proposition that the defendants were required to exercise a right of reentry in order to extinguish the easement. Rather, the plaintiff has failed to distinguish this case from *Eis* v. *Meyer*, supra, 17 Conn. App. 670, wherein this court held that an easement subject to a condition subsequent was terminated automatically upon the occurrence of that condition.

[5] The defendants state in their brief: "In light of the separate determination that the right to use the driveway has terminated and that the defendants therefore have the exclusive right to the use of the rear of [their property], the defendants do not believe that injunctive relief is any longer necessary in the context of the existing trespass claim."