**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**Robert Heavner,**
**Defendant Below, Petitioner,**

**FILED**
**June 10, 2020**
**released at 3:00 p.m.**
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs)  No. 18-1080** (Berkeley County CC-02-2017-P-412)

**Three Run Maintenance Association, Inc.,**
**Plaintiff Below, Respondent.**

### MEMORANDUM DECISION

This is an appeal from multiple orders[1] of the Circuit Court of Berkeley County, West Virginia, granting judgment against petitioner/defendant below, Robert Heavner[2] ("petitioner"), in favor of respondent/plaintiff below, Three Run Maintenance Association, Inc, ("TRMA").[3]  The circuit court found that the approximate four-acre parcel petitioner obtained at a tax sale was subject to a fifty-foot roadway easement for the use of lot owners in the adjoining subdivision and granted a permanent injunction against petitioner from interfering with the easement and/or the use of an adjacent lake and recreation common area.  Petitioner contends the circuit court erred in its assessment of the controlling plat and therefore granted an incorrect easement width.  Petitioner further contends the court erred in finding that he created a private nuisance and awarding attorney fees, where he prevailed on certain theories advanced by TRMA.

This Court has considered the parties' briefs, oral arguments, and the record on appeal. Upon consideration of the standard of review and the applicable law, we find no substantial question of law presented nor prejudicial error.  For these reasons and those set forth herein, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure. Certain other matters are remanded for determination by the circuit court, as more fully set forth herein.

---

[1] Attached to petitioner's Notice of Appeal are orders dated December 19, 2017, February 20, 2018, April 24, 2018, April 30, 2018, July 3, 2018, July 31, 2018, August 19, 2018, and November 2, 2018 encompassing the piecemeal resolution of issues in the proceedings below.  On May 11, 2018, the circuit court entered a "Stipulation and Order" indicating that the appeal period for the orders dated February 20, 2018, April 24, 2018, and April 30, 2018, which only partially resolved the claims asserted, would not begin to run "until such time as a final and appealable Order has been entered as so indicated herein."

[2] Petitioner is represented by Christopher P. Stroech, Esq., of Arnold Bailey, PLLC.

[3] TRMA is represented by Braun A. Hamstead, Esq. of Hamstead & Associates L.C.

1

## I. Factual and Procedural History

In 1966, C. H. McDonald set out to create a subdivision in the Mill Creek District of Berkeley County, West Virginia. The subdivision property is accessed from Three Run Road by way of a roadway at the entrance to the subdivision, which crosses over Three Run Lake and dam (the "dam roadway"); the roadway is now known as "Aspen Drive" and is the only means of access to the subdivision property. In 1966, McDonald recorded a "preliminary plat" designated as "Three Run Acres" which contains an annotation which reads "Dam Roadway 12' Wide."

After conveying a few lots in Three Run Acres,[4] McDonald apparently desired to convey a large portion of the subdivision property to Arthur Radin for continued development. On July 16, 1969, McDonald executed a deed to Radin conveying, by metes and bounds, approximately seventy-eight acres of the subdivision property inclusive of the dam roadway, the lake, and an adjacent recreation area.[5] The deed is accompanied by a plat which denotes a "30' Wide Roadway" running through the property conveyed, but no specific reference to the dam roadway or its width.

Almost immediately thereafter, on July 31, 1969, Radin recorded a plat of the subject property entitled "Three Run *Woods*"; it likewise makes no specific reference to the dam roadway or its width, but contains a "Note" which generally expands roadways in the subdivision to fifty feet wide. The "Note" reads:

> The lot property lines extend to the centerlines of roads as shown and noted. A 25 ft. wide easement over adjacent lots, or a *50 foot wide easement through lots in each case totaling 50 ft. in width* is retained for the purpose of constructing and maintaining road access. The road easement has a sq. ft. radius in the cul-de-sacs as indicated.

(emphasis added). The plat also contains shaded areas, which appear to include the lake and recreation area, with a notation that these areas "indicate[] jointly owned premises."[6] Neither the

---

[4] The appendix contains five deeds between 1968 and 1969 from McDonald to various individuals consisting of Lots 3, 7, 8, 10, and 55 and which reference the 1966 plat. The deeds contain no language expressly granting or reserving an easement. Petitioner maintains these out-conveyances with reference to the 1966 plat are critical, as more fully discussed *infra*.

[5] This deed reserved and excepted from the conveyance Lots 7 through 10 and the "school lot."

[6] Two deeds contained in the appendix record also reference this shaded area and state:

> All facilities which are marked on the plats of said Sub-division with shaded diagonal lines, which may include, but are not limited to, lakes, ponds, parking areas, picnic areas, restroom facilities and

2

documents in the appendix record nor testimony adduced below delineate the exact boundaries of Three Run Woods relative to Three Run Acres with sufficient clarity; however, testimony makes clear that both subdivisions continue to coexist, but with Three Run Woods comprising the overwhelming majority of the subject area. Both subdivisions continue to be accessed by the same entry-point: the dam roadway.

In 1979, Radin conveyed four specific lots and "[a]ll of the remaining lots, pieces or parcels of land" in Three Run Woods to L & L Corporation. Notably, the conveyance specifically refers to the 1969 plat for Three Run Woods. L & L Corporation thereafter conveyed the same to Omco Corporation in 1981. In 2008, Omco quitclaimed the "lake area" consisting of 4.7283 acres back to L & L Corporation. Notwithstanding these conveyances, homeowners within the two subdivisions continued to maintain the lake and recreation area, as well as the roads.[7]

In 2014, petitioner purchased the 4.7283 acre parcel—which ostensibly included the lake/recreation area and roadway over the dam—at a tax sale for $25 after the property taxes were deemed delinquent. Three years later,[8] in 2017, petitioner began exercising control of the property by putting "no trespassing" signs near the lake area, digging a hole adjacent to the dam roadway, placing landscaping timbers/railroad ties and cement pavers alongside the dam roadway, and claiming the subdivision homeowners had rights to only a twelve-foot easement over the dam roadway.[9] The homeowners objected because the items along the road prevented them from

> springs, shall become the *joint property of all of the lot owners in said Sub-division, and all said lot owners shall have equal rights to the use thereof.* The developers, however, retain the exclusive right, if they should so desire, to maintain the said facilities on the jointly owned premises.

(emphasis added). Since the appendix record contains no testimony or evidence regarding a complete title search, it is not clear how many of the deeds for the subdivision contain similar language.

[7] The homeowners went so far as to issue fishing permits for residents, institute rules about the size of watercraft on the lake, and maintain the trees and brush along the lake and dam to prevent obstruction to the overflows. The recreation area on the opposite side of the dam was utilized for parties, gatherings, fireworks, etc. by the residents. All of the "common areas" were maintained by the residents including mowing, snow/ice removal, and management of drainage in and around the dam and lake area. The dam roadway was paved and maintained by TRMA or its predecessor entity.

[8] TRMA suggests, and petitioner appears not to dispute, that he waited until this time to take these actions in an effort to circumvent the statute of limitations for challenging his tax deed.

[9] TRMA alleges that petitioner was aggressive in exercising his property rights by threatening to put large "sea containers" alongside the roadway, writing threatening letters to the association, allowing a large pontoon boat to enter the lake and damage the hillside, and cutting

3

parking there while awaiting the school bus, obstructed parking necessitated by icy roads in the subdivision, and otherwise created a hazard to vehicles traveling in and out of the subdivision. Petitioner demanded $10,000 to purchase the lake area from him; after a homeowner offered to do so, he raised the price to $20,000.

TRMA[10] filed the instant action seeking an injunction against petitioner's obstruction of the easement, asserting that petitioner's tax deed was void or voidable,[11] and alleging a claim for nuisance. At the preliminary injunction hearing, the president of TRMA testified that the dam roadway obstructions created a safety hazard for vehicles traveling past each other by preventing them from leaving the asphalt if needed and also prevented parents from parking alongside the dam roadway to await the school bus with their children. Their inability to temporarily park in this area while awaiting the bus required the parents to park on the other side of Three Run Road and their children to then cross back over the road to board the bus. Petitioner testified that he merely placed the timbers and barriers there to prevent vehicles from sliding into the lake and to protect himself from liability.

After the hearing, the circuit court issued a preliminary injunction which required petitioner to remove the cement pavers and railroad ties/timbers from alongside the dam roadway and to fill in the hole he created adjacent to the roadway. Petitioner failed to fully comply with the preliminary injunction order, only moving the materials back further from the dam roadway; as a result, the court issued a rule to show cause. Upon issuance of the rule to show cause, petitioner complied and the court awarded TRMA attorney fees in the amount of $1,350.

Thereafter, the circuit court granted TRMA's motion for partial summary judgment as to the width of the easement across the dam roadway, finding that a fifty-foot easement existed. The circuit court found that petitioner's tax deed ultimately derived from Radin's deed, which referenced the 1969 plat establishing a fifty-foot easement, stating that "[petitioner's] grantors took the property subject to the easement described in the 1969 Plat." The circuit court denied petitioner's motion to dismiss the count alleging that his tax deed was void or voidable, finding

_____

brush which allegedly obstructed the overflows. During an encounter with a TRMA member, petitioner apparently gave him lemon trees to remind TRMA that he would always "be a thorn in [its] backside."

[10] TRMA dedicates a large portion of its briefs to detailing the circumstances under which the maintenance association came into being, its predecessor homeowners association, and its attempts to exercise more overt control over the maintenance and ownership of the lake area and roadways within the subdivisions. None of this information, however, appears pertinent to the issues at hand.

[11] TRMA challenged the tax deed on two bases: 1) as a "common interest community," the lake area (an alleged common area) was not subject to *ad valorem* taxes; and 2) petitioner failed to provide proper notice to TRMA pursuant to the tax sale. The circuit court ultimately ruled against TRMA on those issues and they were not cross-assigned as error.

4

that issue and the issue of whether petitioner interfered with the easement was not yet ripe for consideration.

Thereafter, petitioner effectively moved to set aside the summary judgment award as to the fifty-foot easement and denial of his motion to dismiss, by filing his own motion for summary judgment on those issues. Petitioner argued that "newly discovered evidence" indicated that the prior ruling was in error. In particular, petitioner pointed to a "Description of Resurvey" dated December 7, 1973 and a deed of Lot 48-A in Three Run Acres to Charles Michael Heck and Linda Kay Heck dated July 19, 1974 (the "Heck deed") which he claims supported his contention that there was merely a twelve-foot easement. The circuit court rejected the idea that these publicly-recorded documents constituted "newly discovered" evidence, but nevertheless considered them and determined they had no effect on the prior ruling. The circuit court found that the documents mention only a *thirty*-foot easement and "do not pertain to the specific portion of the road through [petitioner's] land that is currently at issue."[12] The court also denied petitioner's motion for summary judgment as to the statute of limitations on the void/voidable tax deed issue, citing the need for further factual development.

On May 24, 2018, the court conducted a bench trial on the remaining issues. Petitioner did not testify at trial,[13] nor did he call any witnesses; TRMA's president and vice-president testified regarding the alleged nuisance and obstruction created by petitioner's conduct.[14] Nineteen joint exhibits were submitted as evidence, consisting primarily of documents purporting to demonstrate the chain of title, along with five additional exhibits by TRMA consisting mainly of correspondence from petitioner. No experts testified on either party's behalf, nor did counsel conduct any closing argument. Rather, the court directed the parties to submit findings of fact and conclusions of law.

On July 3, 2018, the circuit court entered a judgment order finding 1) the lake and its surrounding recreation area was not "jointly" owned by the residents, but rather was a common area designated for the "use and enjoyment of all [] owners and their guests"; 2) the tax deed was not void inasmuch as the county commission, and not the circuit court, had authority to determine

---

[12] Neither the surveys accompanying these documents nor any other evidence introduced below identify the location of the properties described therein relative to the dam roadway or lake/recreation area at issue with sufficient clarity.

[13] Petitioner did, however, testify at the preliminary injunction hearing and the transcript of those proceedings was incorporated by reference, without objection, into the bench trial proceedings.

[14] The vice president testified that petitioner would "chas[e] individuals out" of the area and would threaten that anyone attempting to maintain the areas would be considered trespassers. He further testified that petitioner's cutting of trees and brush near the lake caused overflow of the lake because it was left to obstruct the drain and run-off areas. He testified that due to petitioner's use of the area, it had become an eyesore due to the lack of maintenance and dumping of crates, timbers, and the like.

5

issues of taxability[15]; 3) petitioner obstructed the fifty-foot easement with his placement of pavers and timbers near the road, warranting a permanent injunction; and 4) petitioner created a private, rather than public, nuisance relative to the lake/recreation area, by preventing the lot owners from using and enjoying it. The court awarded a permanent injunction prohibiting petitioner from interfering with the fifty-foot easement and the lake/recreation area, as well as attorney fees. In a separate order calculating the attorney fee award, the court found that the accounting of fees submitted by TRMA included 1) fees generated in pursuing the rule to show cause, which had already been awarded; and 2) fees related to the voidability of the tax deed, a claim upon which TRMA was not successful. Accordingly, it reduced the claimed fees of $22,359.32 to $18,981.82.

After the judgment order and attorney fee award, petitioner filed two motions: 1) a motion for "clarification" of the judgment order; and 2) a motion for injunctive relief to prevent TRMA from "denying [him] the enjoyment and use of his property—the Lake Area."[16] The court denied both motions without prejudice. It found that the first motion failed to identify what part of the judgment order required clarification and was filed past the deadline for motions pursuant to West Virginia Rule of Civil Procedure 59. The second motion was denied as "foreign to the pleadings" inasmuch as there was no complaint or claim seeking such relief; it further found that the matter had been fully litigated and any subsequent conduct was not part of the proceedings. This appeal followed. [17]

## II. Standard of Review

Inasmuch as this matter was resolved by way of bench trial, the following standard of review is controlling:

> In reviewing challenges to the findings and conclusions of the circuit court made after a bench trial, a two-pronged deferential standard of review is applied. The final order and the ultimate disposition are reviewed under an abuse of discretion standard, and the circuit court's underlying factual findings are reviewed under a clearly erroneous standard. Questions of law are subject to a *de novo* review.

---

[15] *See* n.11. This issue was not cross-assigned as error and is therefore not before the Court.

[16] Petitioner alleged TRMA blocked his access to the lake area by vehicle and placed "no trespassing" signs.

[17] After filing his petition for appeal, petitioner refused to post an appeal bond and moved the circuit court to stay the matter, which stay was refused. TRMA moved forward with execution and sale of petitioner's properties to satisfy the judgment. Petitioner then moved this Court for a stay asserting he could not afford a bond, which was likewise refused. Petitioner then filed a second motion to stay on the eve of the sale of his property which included his home, stating that he had raised money for a bond. The Court again refused; however, in the interim, petitioner apparently paid the attorney fee award in full and the sale of his property was cancelled.

6

Syl. Pt. 1, *Pub. Citizen, Inc. v. First Nat. Bank in Fairmont*, 198 W. Va. 329, 480 S.E.2d 538 (1996). Moreover, when the court serves as finder of fact, findings "based on oral or documentary evidence, shall not be overturned unless clearly erroneous, and due regard shall be given to the opportunity of the circuit judge to evaluate the credibility of the witnesses." *Brown v. Gobble*, 196 W. Va. 559, 563, 474 S.E.2d 489, 493 (1996).

Further, with respect to the injunctive relief, "[t]he denial or granting of an injunction by a trial court is discretionary and will not be disturbed upon an appeal unless there is an absolute right for an injunction or some abuses shown in connection with the denial or granting thereof." Syl. Pt. 6, *Bd. of Dental Examiners v. Storch*, 146 W. Va. 662, 122 S.E.2d 295 (1961). More specifically,

> [i]n reviewing objections to the findings of fact and conclusions of law supporting the granting or the denial of a temporary or preliminary injunction, we will apply a three-pronged deferential standard of review. We review the final order granting or denying the temporary injunction and the ultimate disposition under an abuse of discretion standard, we review the circuit court's underlying factual findings under a clearly erroneous standard, and we review questions of law de novo.

Syl. Pt. 1, *Bansbach v. Harbin*, 229 W. Va. 287, 728 S.E.2d 533 (2012). With these standards in mind, we address the parties' arguments.

### III.  Discussion

Petitioner asserts that the circuit court erred in 1) finding a fifty-foot roadway easement existed for "any and all" purposes; 2) granting injunctive relief when petitioner did not obstruct the roadway or use of the lake/recreation area; 3) finding his acts constituted a private nuisance; and 4) awarding attorney fees. We will address each argument in turn.

*WIDTH OF EASEMENT*

Petitioner first argues that the documentary evidence submitted below supports either a twelve- or thirty-foot wide easement,[18] rather than the fifty-foot easement found by the circuit court. Petitioner insists that the 1966 plat's reference to the "12' Dam Roadway" is conclusive evidence that the easement is limited to that width, yet also argues that various documents—specifically the 1973 "Description of Resurvey" and 1974 Heck deed—suggest the easement is thirty feet wide. Petitioner further argues that because there had been out-conveyances subsequent to the filing of the 1966 plat, any attempted modification of the plat to increase the twelve-foot easement width in 1969 would improperly alter the easement width. Finally, petitioner insists that the 1969 plat's reference to the easement running "over" and "through" the lots necessarily

---

[18] Petitioner fails to definitively advocate for which measurement he believes is correct, but appears to ultimately argue in favor of a twelve-foot easement.

excludes the dam roadway because the dam roadway is not adjacent to an area designated as a numbered lot in the plat.

TRMA counters that, at the time of the filing of the 1969 plat, the developer (Radin) still owned a fee simple interest to the area where the dam roadway crosses and could expand the easement if he so chose. Consistent with TRMA's position, the circuit court found that petitioner's title derives from the 1969 plat, which contains the aforementioned "Note" expressly providing for a fifty-foot easement, and that the areas discussed in the 1973 Description of Resurvey and 1974 Heck deed were not in the same vicinity as the dam roadway at issue. As to petitioner's insistence that the fifty-foot easement applied only to the roads adjacent to numbered lots, the circuit court found that the plain language of the plat indicates that the easement width prescribed therein applied to "all of the then-existing roads in the Three Run area."

Because petitioner's first assignment of error presents primarily a factual, rather than legal,[19] issue, we must adhere to our standard of review mandating that the circuit court's factual findings "based on oral or documentary evidence, shall not be overturned unless clearly erroneous[.]" *Brown,* 196 W. Va. at 563, 474 S.E.2d at 493. Given the dearth of testimony below providing context and significance to the title documents submitted into evidence, we are hard-pressed to ascertain any clear error. Petitioner provided no testimony or evidence of a complete title search, survey, or other examination of the documentation and/or subject properties, much less analysis of the title documents.[20] He compounded this failure by introducing piecemeal survey documents and deeds without context. In effect, petitioner relegated the circuit court to the role of title abstractor, with no evidence that the documents submitted fully and accurately reflected the state of the title, and now complains that the court reached the wrong conclusion. Even before this Court, petitioner fails to provide a cogent argument demonstrating any clearly erroneous factual findings or support for his claim that the easement is limited to twelve feet, due to a simple reference to a roadway width in a prior plat. *See O'Dell v. Stegall,* 226 W. Va. 590, 622, 703 S.E.2d 561, 593 (2010) ("[W]e cannot say that the plaintiff introduced clear evidence of the precise location of the land that was adversely used."); *Husson v. Teays Valley Indus. Park Owners & Users Ass'n*, No. 15-0088, 2016 WL 1417863, at *6 (W. Va. Apr. 8, 2016) (memorandum decision) (rejecting challenge to court's determination regarding property lines after bench trial where documents introduced regarding chain of title supported circuit court's factual findings); *cf. Blair v. Preece*, 180 W. Va. 501, 505, 377 S.E.2d 493, 498 (1988) (contrasting testimony of surveyor with introduction of mere "chain of documents" regarding location of boundary line).

---

[19] Petitioner fails to provide any law which the circuit court misapprehended or otherwise erred in its application to the record evidence. In his brief, he characterizes the circuit court's ruling as erroneous because it was made "without the benefit of complete and accurate information."

[20] In fact, even after the circuit court had entered summary judgment in TRMA's favor on the width of the easement and petitioner moved to reconsider on the basis of "newly discovered" documents from the county clerk's office, his counsel indicated he was still "researching and [would] supplement [the] Motion" with additional deeds.

Both before this Court and the circuit court, petitioner appears to be using the morass of non-contextual documentation introduced into evidence to his best advantage by cherry-picking isolated references about various roadway widths without supporting testimony or argument precisely locating and/or explaining their significance. While this Court has never expressly held that expert testimony in a property dispute is required, petitioner has provided neither the circuit court nor this Court sufficient evidence regarding the inter-relationship of the various documents and attached plats and surveys to establish his position or upon which to conclude that the circuit court plainly erred. *See, e.g Lowe v. Hegyi*, No. 15-0718, 2016 WL 5867273, at *6 (W. Va. Oct. 7, 2016) (memorandum decision) (finding no error where petitioners "offered no expert testimony upon which the court could determine that the [] plat failed as a matter of law"). This Court has made clear that "[t]he finding of a trial court upon the facts submitted to it in lieu of a jury will be given the same weight as the verdict of a jury and will not be disturbed by an appellate court unless the evidence plainly and decidedly preponderates against such finding." Syl. Pt. 7, *Bluefield Supply Co. v. Frankel's Appliances, Inc.*, 149 W. Va. 622, 142 S.E.2d 898 (1965). We find no such evidence here.

Rather, based upon this Court's review of the appendix record, we find more than adequate support for the circuit court's conclusion that petitioner's deed derives of the 1969 plat which plainly identifies a fifty-foot easement for constructing and maintaining road access in the previously-described "Note."[21] "'When lands are laid off into lots, streets, and alleys, and a map plat thereof is made, all lots sold and conveyed by reference thereto, without reservation, carry with them, as appurtenant thereto, the right to the use of the easement in such streets and alleys necessary to the enjoyment and value of such lots.' Syllabus Point 2, *Cook v. Totten*, 49 W. Va. 177, 38 S.E. 491 (1901)." Syl. Pt. 1, *Knotts v. Snyder Enterprises, Inc.*, 170 W. Va. 727, 296 S.E.2d 849 (1982). The deed from Radin to L & L Corporation specifically references the 1969 plat, in which a fifty-foot easement is plainly created.[22] All grantees subsequent to L & L Corporation took subject to the fifty-foot easement created in the plat, including the delinquent taxpayer from whom petitioner's tax deed derives. West Virginia Code § 11A-3-62(a) (1994) provides in pertinent part:

> Whenever the purchaser of any tax lien on any real estate sold at a tax sale, his heirs or assigns, shall have obtained a deed for such real estate from the deputy commissioner or from a commissioner appointed to make the deed, he or they shall thereby acquire all such right, title and interest, in and to the real estate, as

---

[21] Additionally, to whatever extent there is any substance to petitioner's contention that an attempted modification of the easement would detrimentally affect the out-conveyances made subject to the 1966 plat, he has no standing to assert any such issue. "By force of logic, statute, and case law, however, a party must have title to a property to bring an action to quiet title. With no title, there is nothing to be quieted." *Barclay v. Robert C. Malt & Co.*, 985 So.2d 53, 54 (Fla. Dist. Ct. App. 2008).

[22] We likewise agree with the circuit court that the easement language utilizing "lots" as a reference point to describe the width of the easement does not suggest the easement exists only as to roads which abut the numbered lots.

9

was, at the time of the execution and delivery of the deed, vested in or held by any person who was entitled to redeem . . . .

Therefore, by statute, petitioner attained no greater or different rights under his tax deed than the delinquent taxpayer held and his property is therefore subject to the same easement.

Moreover, to whatever extent petitioner maintains that his property is encumbered solely by the "12' Wide Roadway" reference in the 1966 plat, we find that he has failed to provide any evidence or authority that this mere reference was sufficient to create an express easement in the first instance. There is no evidence that this reference served as more than a mere marker or indicator on the plat inasmuch as there is no language designating it as a right-of-way or easement. *See Our Lady of the Rockies, Inc. v. Peterson*, 181 P.3d 631, 650 (Mont. 2008) ("[T]he intent to create an easement must be clearly and unmistakably communicated on the referenced plat or certificate of survey using labeling or other express language. This is the minimal requirement to establish the easement."). Additionally, petitioner introduced no evidence of intent with respect to the 1966 plat which may have indicated an intention to create an easement by that reference. *See Farley v. Farley*, 215 W. Va. 465, 469, 600 S.E.2d 177, 181 (2004) (finding that intention of parties as pertained to express grant of easement is controlling).

Even assuming that the "12' Wide Roadway" reference created an express easement, petitioner provides no reason why any such purported easement was not successfully modified by the subsequent plat. As TRMA notes, at the time the 1969 plat was created and filed, Radin still ostensibly owned the fee simple to the area encompassing the dam roadway and lake/recreation area and therefore was entitled to create and/or expand the easement as to any subsequent grantees.[23] Finally, we find no basis upon which to conclude that the circuit court erred in determining that the thirty-foot roadway references in the Description of Resurvey and Heck deed were not in the vicinity of and therefore had no bearing on the easement area at issue. In view of all of the foregoing, we find no error in the circuit court's conclusion that a fifty-foot easement exists across the dam roadway.

*USE OF THE EASEMENT*

As a subset of his assignment of error regarding the easement width, petitioner also argues that the circuit court erred in permitting the easement to be used for "any and all purposes" and that its use should be limited to ingress and egress, *i.e.* that parking by the subdivision residents is

---

[23] Because petitioner failed to introduce evidence of a complete title examination, there is no evidence of any out-conveyances by Radin, which would determine precisely which "lots, pieces or parcels of land" were remaining to be conveyed to L & L Corporation at that time. However, presumably the deed to L & L Corporation included the dam roadway, lake, and recreation area. Otherwise, petitioner would not have been able to obtain title to this disputed area in his purchase of the tax deed.

10

beyond the scope of the easement.[24]  In support, petitioner cites general caselaw which provides that easements are limited to their "terms and purposes":  "Where one acquires an easement over the property of another by an express grant, the use of that easement must be confined to the terms and purposes of the grant."  Syl. Pt. 1, *Hoffman v. Smith*, 172 W. Va. 698, 310 S.E.2d 216 (1983). *See also* Syl. Pt. 2, *Lowe v. Guyan Eagle Coals, Inc*., 166 W.Va. 265, 273 S.E.2d 91 (1980) ("No use may be made of a right-of-way different from that established at the time of its creation so as to burden the servient estate to a greater extent than was contemplated at the time of the grant.").

Petitioner maintains that the 1966 plat's reference to a twelve-foot "*roadway*" and the 1969 plat's designation of a fifty-foot easement for "constructing and maintaining road access" is evidence that the easement's use is restricted to literal coming and going and not parking. However, none of the plats or deeds upon which petitioner relies specifically state that the easement is exclusively for "ingress and egress."  *See Leposky v. Fenton*, 919 A.2d 533, 537 (Conn. App. Ct. 2007) (prohibiting consistent parking and storage of boat where "the language creating the right-of-way explicitly limits the plaintiffs' easement rights to ingress and egress").

Moreover, petitioner cites no cases in support of his contention that a roadway easement cannot be utilized for *temporary* parking on the easement.  Petitioner does not allege that any homeowners park and leave their vehicles with regularity, for an extended period of time without necessity, or in a manner which obstructs the use of the easement.  *Compare Loveman v. Lay*, 124 So.2d 93, 97 (Ala. 1960) (prohibiting parking in easement where cars were "parked unattended in the alley from around 8:30 A.M. to 4:30 to 5:00 P.M. . . . . [and] it was necessary to find the owner of the car and the removal would take from five to fifteen minutes each time."); *Mad River Sec., Inc. v. Felman*, 112 N.E.2d 646, 648 (Ohio 1953) (prohibiting parking where use of right of way "for parking and storing automobiles over protracted periods of time [] render[ed] the alley impassable for indefinite periods").

We note that the appendix record reveals that the roadway pavement itself is twenty feet wide, allowing for fifteen feet of easement width on either side of the roadway where vehicles could park temporarily without exceeding the width of the granted easement.  "It is one thing to expand a use . . . by reason of changed conditions and times and quite another to engage in an unauthorized practice entirely foreign to the use."  *Mad River Sec., Inc.*, 112 N.E.2d at 648.  We find that temporarily parking in occupied vehicles while awaiting a school bus or occasional parking while awaiting a clearing of the hazardous icy hill leading into the subdivision could hardly be construed as an expansion of a roadway easement or "foreign" to its use.  Accordingly, we likewise conclude that the circuit court committed no error in this regard.[25]

---

[24] Petitioner also incorporates the use of the lake area into this argument but is not specific as to how the homeowners' use of that area should be limited relative to the court's ruling.

[25] Relative to this issue, petitioner further argues that the circuit court erred in refusing to "clarify" its ruling after the judgment order was entered in response to his complaints that TRMA placed "no trespassing" signs on the property allegedly "directed at [him]" and moved the timbers left in the area to allegedly block his vehicle access to the lake area.  However, as the circuit court properly concluded, there is nothing unclear about the language of the order; any subsequent

Next, petitioner argues that the court erred in finding that his actions—which he characterizes as merely "using and protecting his property"—constituted a private nuisance and in finding an obstruction which necessitated a permanent injunction. We note that petitioner scarcely argues this issue; he argues in conclusory fashion that any interference was neither substantial nor unreasonable. He maintains he never blocked the *paved* portion of the road and that other than occasionally driving through the neighborhood and cutting brush which allegedly clogged the overflow for the dam, he did nothing which interfered with the easement.

As set forth in greater detail *supra*, respondent counters that petitioner intentionally blocked parking alongside the roadway but within the easement width, creating a traffic hazard. He further allowed the lake/recreation area to become a health and safety hazard, subjecting the community to flooding due to blockage of the overflows, among other abusive and obstructive behaviors. Respondent contends these acts were designed to further petitioner's attempted "extortion" of an exorbitant payment for the land.

To establish a private nuisance, as found by the circuit court, this Court has held: "A private nuisance is a substantial and unreasonable interference with the private use and enjoyment of another's land." Syl. Pt. 1, *Hendricks v. Stalnaker*, 181 W. Va. 31, 380 S.E.2d 198 (1989). Further, "[a]n interference with the private use and enjoyment of another's land is unreasonable when the gravity of the harm outweighs the social value of the activity alleged to cause the harm." Syl. Pt. 2, *Id*.

Whether the intent TRMA attributes to petitioner is accurate or not, we find that petitioner's position that his actions were neither substantial nor unreasonable ignores a great deal of the testimony elicited during the preliminary injunction hearing, which the circuit court plainly found credible. *See* nn. 9 and 14, *supra*. "This Court gives due regard to a circuit judge's ability to evaluate the credibility of the witnesses. Under this standard, 'if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety, we may not reverse it[.]'" *Harrell v. Cain*, 242 W. Va. 194, ___, 832 S.E.2d 120, 132 (2019) (quoting *Brown*, 196 W.Va. at 563, 474 S.E.2d at 493). The record evidence presented below clearly established that petitioner created a hazard to vehicles using the easement, intentionally blocked their full use of the easement area, and created a hazard and eyesore at the lake/recreation area.[26] *Cf. State Rd. Comm'n v. Oakes*, 150 W. Va. 709, 717, 149 S.E.2d 293, 298–99 (1966) (issuing injunction where defendant piled "unsightly materials, consisting of various kinds of lumber, old furniture, [and] cross-ties . . .

---

dispute is a new issue which is foreign to the issues litigated and not subject to *post-hoc* relief. Petitioner is not entitled to hold the court's jurisdiction hostage while he litigates *ad infinitum* each and every grievance he may ultimately have with TRMA.

[26] "While unsightliness alone rarely justifies interference by a circuit court applying equitable principles, an unsightly activity may be abated when it occurs in a residential area and is *accompanied by other nuisances*." Syl. Pt. 11, *Burch v. Nedpower Mount Storm, LLC*, 220 W. Va. 443, 647 S.E.2d 879 (2007) (emphasis added).

[which] obstruct[ed] the view of the intersection . . . and creat[ed] a traffic hazard on the road"). We therefore find no error with respect to the circuit court's finding of a private nuisance.

Accordingly, with respect to the award of injunctive relief, we find no abuse of discretion; petitioner's conduct was patently obstructive and necessitated such relief to preserve the homeowners' right of use and enjoyment of the easement and lake/recreation area. *See Knotts*, 170 W. Va. at 728, 296 S.E.2d at 850 ("Numerous decisions sustain the proposition that once the right to the use of such way has been established, a mandatory injunction is the proper procedure to remedy its obstruction or encroachment.").

*ATTORNEY FEES*

Finally, petitioner argues that the circuit court erred in awarding attorney fees because he prevailed on "several claims," including whether the tax deed was void or voidable and the lack of a *public* nuisance. TRMA counters that it effectively prevailed *in toto*, winning a favorable declaration of the width of the easement, an injunction, and a finding of nuisance.

This Court has repeatedly held that "'the trial [court] . . . is vested with a wide discretion in determining the amount of . . . court costs and counsel fees; and the trial [court's] . . . determination of such matters will not be disturbed upon appeal to this Court unless it clearly appears that [it] has abused [its] discretion.' Syl. Pt. 3, in part, *Bond v. Bond*, 144 W.Va. 478, 109 S.E.2d 16 (1959)." Syl. Pt. 1, *Heldreth v. Rahimian*, 219 W. Va. 462, 637 S.E.2d 359 (2006).

We find that this assignment of error is wholly without merit. Petitioner ignores that the fees for the lone substantive claim on which he was successful—the voidability of the tax deed— were excised from the fee award by the circuit court. The claim of public nuisance was merely a corollary to the private nuisance claim successfully advanced by TRMA. Without question, TRMA was successful in every substantial aspect of the proceedings.

Furthermore, TRMA has requested its "attorney fees and expenses incurred in this appeal." As set forth in its judgment order, the circuit court below found attorney fees recoverable in this matter on the basis of petitioner's "bad faith prior to this litigation and in connection with this litigation."[27] In support of its award, the circuit court cited to syllabus point four of *Bowling v. Ansted Chrysler-Plymouth-Dodge, Inc.*, 188 W. Va. 468, 425 S.E.2d 144 (1992): "Where it can be shown by clear and convincing evidence that a defendant has engaged in fraudulent conduct which has injured a plaintiff, recovery of reasonable attorney's fees may be obtained in addition to the damages sustained as a result of the fraudulent conduct."

Rule 24 of the West Virginia Rules of Appellate Procedure provides that "[a]ttorney's fees and costs are not taxable *unless specifically provided by law*." (emphasis added). Furthermore, in

---

[27] Petitioner did not appeal the *basis* of recoverability of attorney fees and costs in this matter; rather, he appealed only the "excessive[ness]" of the award in light of his position that he was successful on certain claims.

syllabus point two of *Quicken Loans, Inc. v. Brown*, 236 W. Va. 12, 777 S.E.2d 581, 584 (2014), we held:

> Pursuant to Rule 24 of the West Virginia Rules of Appellate Procedure, attorney fees and costs may be awarded for appellate proceedings by either this Court or by the trial court following the direction of this Court. Although this Court has the authority to set the amount of an attorney fee award, this Court may, in its discretion, instead direct the trial court to determine the amount of the appropriate attorney fee award on remand.

Accordingly, we find TRMA's request for attorney fees and expenses incurred in this appeal well-taken. In view of its success on appeal and the lack of challenge to the circuit court's basis for the award of fees, we find that TRMA is entitled to recovery of attorney fees and costs incurred in litigation of this appeal. However, we find that the circuit court is better situated to make an appropriate determination of the amount of fees and costs to be awarded and therefore a limited remand is necessary. *See Michael C. v. Teressa D.*, No. 13-1077, 2014 WL 4930191, at *7 (W. Va. Oct. 2, 2014) (memorandum decision) ("The issue of the reasonableness of attorney's fees is remanded to the circuit court for a hearing to determine the appropriate amount of such an award.").

For the foregoing reasons, we affirm the aforementioned orders of the Circuit Court of Berkeley County, West Virginia. This case is remanded to the Circuit Court of Berkeley County, West Virginia for the limited purpose of determining the appropriate award of attorney fees and costs incurred by the respondent in defending against this appeal.

Affirmed in part; remanded in part.

**ISSUED**: June 10, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

**NOT PARTICIPATING:**

Justice Margaret L. Workman